TOMÁS ENCARNACIÓN, et al., demandantes y apelados, *v.* LUIS JORDÁN, demandado y apelante.

Número 11415.
*Sometido:* 2 de marzo de 1955. *Resuelto:* 30 de junio de 1955.

506

*Ramón H. Vargas* abogado del apelante; *Luis G. Estades y Cunales & Segarra,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Este pleito fué iniciado por 25 obreros contra su patrono Luis Jordán, quien se dedica a la fabricación de mosaicos. En su demanda reclaman aumentos de salarios estipulados en los convenios colectivos que rigieron desde noviembre de 1947 hasta diciembre de 1952, y los cuales aumentos alegan no les han sido satisfechos.

Contestada la demanda y celebrado el juicio correspondiente, la corte a quo dictó sentencia desestimando la demanda en cuanto a veinte de los querellantes por no haber éstos comparecido a sostener sus reclamaciones y en cuanto a los otros cinco, condenó al demandado a pagarles las sumas reclamadas en la demanda, más una suma igual en concepto de penalidad, y las costas, incluyendo $250 para honorarios de abogado. No estando conforme, el demandado apeló.

Los obreros reclamantes estaban afiliados al Sindicato de Trabajadores de la Industria de Mosaicos.[1] En noviembre 20 de 1947 el Sindicato y los dueños de fábrica de mosaicos de San Juan y Río Piedras, entre los cuales figuraba el querellado Luis Jordán, firmaron un convenio colectivo de trabajo que entró en vigor el día 9 de noviembre del mismo año y continuó por el período de un año. El apartado (d) del art. IV de dicho convenio disponía:

"(d) Durante la vigencia de este convenio los patronos convienen en pagar a los obreros que trabajan por hora y que actualmente ganan 32¢ la hora, 35¢ hora; los demás obreros que tra-

[1] Esta Unión era una filial de la Confederación General de Trabajadores de Puerto Rico.

bajan por hora recibirán un aumento de 2¢ la hora. Todo nuevo obrero recibirá un jornal mínimo de 32¢ hora."

Subsiguientemente las relaciones entre los patronos y el Sindicato se regían por convenios colectivos con vigencia durante un año. Respecto a los jornales, estos convenios disponían:

"Artículo IV (d). Durante la vigencia de este convenio regirán los mismos salarios que actualmente están percibiendo los obreros . . . ."

La corte a quo resolvió que los querellantes Pedro Díaz, Santiago Collazo y Miguel Ángel Alers, quienes comenzaron a trabajar para el querellado con posterioridad a la firma del convenio colectivo de 20 de noviembre de 1947, tenían derecho a percibir el aumento de tres centavos dispuesto en el art. IV (d) de dicho convenio a partir de los primeros 30 días en que comenzaron a trabajar. En su primer señalamiento el apelante imputa al tribunal sentenciador haber cometido error al interpretar el art. IV (d) del convenio en la forma antes expresada. Su contención es que todo obrero que comenzara a trabajar con posterioridad a la firma del susodicho convenio colectivo sería considerado bajo el art. IV (d) como "nuevo obrero", y por tanto, con derecho a percibir un jornal mínimo de 32¢ la hora que fué el jornal pagado a estos tres obreros durante el período comprendido en sus reclamaciones.

 Tiene razón el apelante. Hemos visto que el art. IV (d) del convenio proveía que "los patronos convienen en pagar a los obreros que trabajan por hora *y que actualmente ganan* 32¢ la hora, 35¢ hora; . . . . " (Bastardillas nuestras). Obviamente este aumento de 3¢ cubría a aquellos obreros que al momento de firmarse el convenio estaban ganando 32¢ por hora. No podemos dar otra interpretación a la frase "y que actualmente ganan 32¢ la hora". Seguía disponiendo dicho artículo que "los demás obreros que trabajan por hora recibirán un aumento de 2¢ la hora". Es claro también que esta disposición se refería a aquellos obreros que ya estaban trabajando para el patrono aquí apelante para la fecha de

la firma del convenio, recibiendo un salario por hora diferente al de 32¢ la hora. Al disponer dicho artículo que los demás obreros que trabajan por horas *"recibirán un aumento de 2¢ la hora,"* se estaba decretando un aumento de 2¢ la hora para los obreros que ya percibían un salario determinado por hora. Ambos aumentos, el de 3¢ y el de 2¢ la hora era pues, para los obreros que ya trabajaban para el apelante, y quienes eran los que estaban negociando el convenio. Obviamente *no podían recibir* un aumento en sus salarios los obreros que *no estaban trabajando.* Pero el art. IV (*d*) disponía además lo siguiente: "Todo nuevo obrero recibirá un jornal mínimo de 32¢ la hora." Esta disposición, a nuestro juicio, establecía el jornal mínimo para los obreros que comenzaron a trabajar para el patrono con posterioridad a la firma del convenio colectivo.

█ La controversia entre las partes gira alrededor de esta última disposición del art. IV (*d*), y específicamente sobre el significado de la frase "nuevo obrero". La corte sentenciadora, fundándose en una cláusula de Taller Unionado (²) incluída en el convenio firmado el día 22 de agosto de 1951, resolvió que la condición de *nuevo obrero,* "por el espíritu mismo

---

(²) Dicha cláusula disponía:

"Taller Unionado

"Será condición para su empleo que todo trabajador que se emplee actualmente con los Patronos o que pudiere emplearse en el futuro, sea un miembro 'bonafide' de la organización obrera contratante denominada el Sindicato. Disponiéndose, que como condición para continuar en su empleo a todo trabajador que en el momento de negociarse este convenio esté trabajando para los Patronos y que no esté afiliado a la organización obrera que forma parte de este contrato—le es concedido un término de treinta (30) días a partir de la firma de este convenio para afiliarse al Sindicato. Toda persona nueva que fuere empleada por los Patronos después de firmarse este convenio viene obligada como condición de su empleo a afiliarse a dicho Sindicato dentro de los treinta (30) días que aquí se señalan. El Sindicato notificará por escrito a los Patronos del incumplimiento por parte del obrero de las disposiciones de este Artículo y el Patrono entonces suspenderá de su empleo inmediatamente al obrero después del recibo de tal notificación. Disponiéndose, sin embargo, que esta cláusula no se pondrá en vigor hasta tanto una mayoría de los empleados dentro de la unidad apropiada, para propósito de contratación colectiva, autoricen a su aprobación mediante unas elecciones conducidas por la Junta Nacional de Relaciones del Trabajo."

del conjunto de las cláusulas de todos los convenios, que la prueba nos demuestra eran iguales, era el que viniendo por primera vez a la industria tenía treinta días para afiliarse al Sindicato y durante ese período recibiría un mínimo de 32¢ la hora. Luego, o se marchaba de la industria o se afiliaba al Sindicato para disfrutar de todos los derechos como miembro del mismo. No vemos cómo el Sindicato podría aumentar sus miembros y así obtener más cuotas de los obreros, si el nuevo obrero habría de seguir ganando 32 centavos por hora igual que el mínimo a que tenía derecho al empezar a trabajar. La afiliación debería tener algún incentivo y eso, a nuestro juicio tendría que ser que el obrero ganaría, luego del mes concedido para su afiliación al Sindicato, los 35 centavos por hora estipulados para los obreros que al firmarse el convenio ganaban 32 centavos la hora."

Debe observarse, en primer lugar, que el convenio colectivo firmado en noviembre de 1947, no contenía la referida cláusula de taller unionado. De todos modos dicha cláusula no tiene relación alguna con los salarios ni afecta la escala de los mismos. Esta cláusula establecía como una condición de su empleo, que el obrero fuera miembro *"bona-fide"* del Sindicato. A los obreros que ya estaban empleados se les concedió un término de 30 días a partir de la firma del convenio (22 de agosto de 1951) para afiliarse al Sindicato. "Toda persona nueva que fuese empleada por los Patronos después de firmarse" el convenio, venía obligada a afiliarse al Sindicato dentro de 30 días para poder continuar en su empleo. Esto no significa, como concluyó la corte a quo—aceptando a los fines del razonamiento que la cláusula de Taller Unionado hubiera figurado en el convenio de 1947—que *nuevo obrero* es el que trabaja los primeros 30 días cuando ha sido empleado después de firmarse el convenio y que una vez transcurrido dicho término pierde su condición de nuevo obrero a los fines del art. IV (*d*). Por el contrario el lenguaje usado en la cláusula de taller unionado es más bien expresivo de que *nuevo obrero* es la "persona nueva que fuere empleada por los Pa-

tronos después de firmarse este convenio . . . . ." El primer error señalado fué cometido.

■■ Después de dirimir el conflicto de la prueba a favor de los querellantes, la corte a quo formuló la siguiente conclusión de hecho:

"4.—Que los querellantes Dionisio Salcedo y Tomás Collazo, comenzaron a trabajar para el querellado con anterioridad a la firma del convenio colectivo de 20 de noviembre de 1947."

El apelante había ofrecido en evidencia ciertas libretas conteniendo, según alegaba, sus nóminas para los años 1947 a 1950, con el propósito de corroborar su testimonio en el sentido de que los dos obreros a que se refiere la anterior conclusión de hecho, habían comenzado a trabajar para él, después, y no antes, de haberse firmado el convenio de 1947. La corte denegó la admisión de la evidencia y esa negativa es el motivo del segundo señalamiento de error.

La corte, después de examinar las libretas ofrecidas en evidencia por el apelante, determinó que en ellas no se identificaban a los obreros debidamente, ni aparecía en las mismas el tipo de jornal, ni los días trabajados. Dichas libretas no han sido elevadas a este Tribunal, y por consiguiente el apelante no nos ha puesto en condiciones de resolver el error planteado. Es oportuno indicar, sin embargo, que la corte a quo permitió al apelante declarar que las nóminas revelarían que Dionisio Salcedo comenzó a trabajar para él en el 1950. A pesar de ello, la corte no dió crédito a su testimonio. El error, de haberse cometido, no sería perjudicial. *Cf. Sucn. Maldonado* v. *Maldonado*, 43 D.P.R. 678.

■ Por el tercero y último error el apelante impugna el pronunciamiento de la corte sentenciadora condenándole a pagar, además de los salarios adeudados, una suma igual por concepto de liquidación de daños y perjuicios.

Hemos dicho antes de que los obreros reclaman en este caso ciertos aumentos en sus salarios estipulados en convenios colectivos. No se trata aquí de que el patrono pagara a dichos

obreros un salario mínimo menor que el fijado para la industria de mosaicos o de que el salario que ellos percibían era menor que el salario que suele pagarse en la localidad por trabajos similares. El convenio colectivo disponía que los obreros que ganaban 32¢ la hora, ganarían 35¢ la hora. En otras palabras, que estos obreros recibirían un aumento en sus salarios de 3¢ la hora. El patrono no pagó el aumento convenido a los obreros Dionisio Salcedo y Tomás Collazo, sino que continuó pagándoles a razón de 32¢ la hora. Dichos obreros reclaman ahora, las cantidades no pagádasle por concepto del aumento de 3¢ la hora.

El apelante arguye que la Ley Federal de Normas Razonables de Trabajo (29 U.S.C.A. 216), la Ley de Salario Mínimo de Puerto Rico y la Ley núm. 379 de 15 de mayo de 1948 ((1) pág. 1255), que son los únicos estatutos que autorizan la imposición del pago en concepto de liquidación de daños y perjuicios, de una suma igual a los salarios adeudados, no son de aplicación a las reclamaciones de los apelados. Por el contrario, éstos alegan que el pronunciamiento impugnado está sostenido por el art. 13 de la citada Ley núm. 379 de 1948.

Considerando que los obreros apelados no imputan a su patrono una violación de la Ley Federal de Normas Razonables del Trabajo, o de algún decreto, orden o resolución de la Junta de Salario Mínimo de Puerto Rico, la cuestión aquí envuelta queda limitada a determinar si bajo la Ley 379 de 1948, los apelados tienen derecho a la compensación adicional en concepto de liquidación de daños y perjuicios.

El art. 13 de dicha Ley, dispone:

"Artículo 13.—Todo empleado que reciba una compensación *menor que la fijada en esta Ley* para horas regulares y horas extras de trabajo, tendrá derecho a recobrar de su patrono mediante acción civil, las cantidades no pagadas más una suma igual por concepto de liquidación de daños y perjuicios, además de las costas, gastos y honorarios de abogado del procedimiento." (Bastardillas nuestras.)

Al discutir este tercer error el apelante hace descansar su argumentación en la frase ". . . . que reciba una compensación *menor que la fijada en esta Ley* para horas regulares . . .". (Bastardillas nuestras.) Sostiene que la Ley 379 no fija compensación alguna para las horas regulares de trabajo y que a falta de otra ley o de algún decreto de la Junta de Salario Mínimo fijando una compensación mínima para la industria de mosaicos, él no viene obligado a pagar a los obreros reclamantes, además de los salarios adeudados por horas regulares de trabajo, una suma igual en concepto de liquidación de daños y perjuicios.

No tiene razón. El art. 13 debe interpretarse conjuntamente con las demás disposiciones de la Ley. Es cierto que la Ley 379 no fija salarios mínimos como lo hace la Ley Federal de Normas Razonables de Trabajo. Ello era innecesario ya que en Puerto Rico se fija el salario mínimo y otras condiciones de trabajo por decretos mandatorios de la Junta de Salario Mínimo. Sin embargo, no queremos decir con esto, que la Ley 379 no obliga al pago de determinada compensación por las horas regulares de trabajo. En su art. 19 define "Contrato de trabajo" como sigue:

" 'Contrato de trabajo' significa todo convenio verbal o escrito mediante el cual se obliga el empleado a ejecutar una obra, realizar una labor o prestar un servicio para el patrono por un salario o cualquier otra retribución pecuniaria. Si no hubiera estipulación expresa en cuanto al salario, será obligación del patrono pagar el salario mínimo fijado para la ocupación, industria o negocio en cuestión, y, a falta de tal determinación, el salario que suele pagarse en la localidad por trabajos similares."

Esta disposición impone al patrono la obligación de pagar (1) el salario estipulado cuando rige un convenio, (2) a falta de convenio, el salario mínimo fijado para la ocupación, industria o negocio en cuestión, como cuando rige un decreto mandatorio de la Junta de Salario Mínimo, y (3) a falta de tal determinación, el salario que suele pagarse en la localidad por trabajos similares. El propio lenguaje usado en el

estatuto nos lleva a esta interpretación. Al decir la ley "Si no hubiera estipulación expresa en cuanto al salario, *será obligación del patrono* pagar el salario mínimo, etc. . . . .", implica que será obligación del patrono pagar el salario que haya estipulado con sus empleados. (Bastardillas nuestras.) En otras palabras, la obligación de pagar el salario mínimo fijado para la ocupación, industria o negocio, y a falta de tal determinación el salario que suele pagarse en la localidad por trabajos similares, nace cuando no hubiere estipulación expresa en cuanto al salario. Si la hay, rige la estipulación y la ley obliga al patrono a su cumplimiento, so pena de incurrir en la responsabilidad señalada en el art. 13.

Puede sostenerse por tanto, que el salario convenido, el salario mínimo fijado para la ocupación, industria o negocio en cuestión y a falta de uno y otro, el salario que suele pagarse en la localidad por trabajos similares, es la compensación que fija la Ley 379 para horas regulares de trabajo. En su consecuencia la falta de pago de los salarios en cualesquiera de estos tres casos da derecho al empleado a reclamar bajo el art. 13 de la Ley.

■■ Cuando hay una estipulación expresa en cuanto al salario, como ocurre en este caso, si el patrono deja de pagar a sus empleados el salario estipulado, vendrá obligado a pagarle además de las cantidades no pagadas, una suma igual por concepto de liquidación de daños y perjuicios, además de las costas, gastos y honorarios de abogado del procedimiento. Esto es así porque la disposición del art. 13 como otras tantas disposiciones de la referida Ley 379, tales como la que fija la jornada legal de trabajo, la que provee compensación a tipo doble para las horas extras de trabajo, la que declara irrenunciable la compensación adicional a base de un tipo doble de trabajo, etc., forman parte de y deben considerarse incorporadas al contrato de trabajo ya que cualquier convenio en contrario entre el patrono y sus empleados queda suplantado por el estatuto. *Sierra, Comisionado* v. *San Miguel,* 70 D.P.R. 604 y *Caguas Bus Line* v. *Sierra, Comisionado,* 73 D.P.R. 743.

El tercer señalamiento de error será desestimado.

*Por los fundamentos expuestos la sentencia apelada será revocada y se desestimará la demanda en cuanto a los querellantes Pedro Díaz, Santiago Collazo y Miguel Alers. En cuanto a los otros querellantes Dionisio Salcedo y Tomás Collazo, dicha sentencia será confirmada.*

Los Jueces Presidente Sr. Snyder y Asociado Sr. Sifre, disienten en cuanto a la imposición de daños líquidos bajo el artículo 13 de la Ley núm. 379 de 1948.

---

Opinión concurrente del Juez Asociado señor Belaval.

Estoy totalmente conforme con la ilustrada opinión rendida por el compañero Juez señor Pérez Pimentel. En cuanto a la penalidad prescrita por el art. 13 de la Ley núm. 379 de 15 de mayo de 1948, por tratarse de un problema nuevo de una Ley de aún reciente adopción, intereso añadir los resultados de mi personal estudio de la cuestión. Se trata de un convenio colectivo de trabajo donde un patrono le paga a determinados obreros, por horas regulares de trabajo, una compensación menor a la compensación estipulada en el convenio.

La Ley núm. 379 de 15 de mayo de 1948 *es una Ley de aplicación general a todo contrato de trabajo*, puesto que rige para "todo establecimiento comercial, industrial y agrícola; en todo taller, fábrica, central, molino y factoría; en toda hacienda, finca, granja, estancia y plantación; en toda empresa de servicio público; en todo negocio lucrativo, incluyendo imprentas, editoriales, empresas periodísticas, clínicas, hospitales, farmacias, instituciones docentes, casas de hospedaje, hoteles, fondas, restaurantes, tiendas, colmados, almacenes, depósitos, mercados, garajes, panaderías, teatros, hipódromos, casinos y otros similares; en toda oficina o establecimiento de negocio, bufete, consultorio y despacho profesional y en todo sitio destinado a la prestación de servicio de cualquiera índole mediante paga; también se aplicarán las disposiciones de esta Ley a todos los chóferes y conductores de ve-

hículos de motor públicos y privados con excepción de aquellos que trabajan a comisión" . . . . (art. 16).

El contrato de trabajo se define como que "significa todo convenio verbal o escrito mediante el cual se obliga el empleado a ejecutar una obra, realizar una labor o prestar un servicio para el patrono por un salario o cualquier otra retribución pecuniaria. *Si no hubiera estipulación expresa en cuanto al salario*, será obligación del patrono pagar el salario mínimo fijado para la ocupación, industria o negocio en cuestión, y, a falta de tal determinación, el salario que suele pagarse en la localidad por trabajos similares" (art. 19, subtópico "contrato de trabajo").

Si bien la Ley núm. 379 no deroga la Ley creando la Junta de Salario Mínimo; la que regula el trabajo de mujeres y niños en ocupaciones peligrosas; la que reglamenta el empleo de menores de edad; la que establece el cierre de establecimientos comerciales e industriales; la que prescribe el día de descanso (art. 22); ni incluye las industrias cubiertas por la Ley de Normas Razonables del Trabajo de 25 de junio de 1938 del Congreso de los Estados Unidos, en todo aquello que pueda estar específicamente provisto en cuanto a horas, salario mínimo y reglamentación peculiar de dichas industrias, no por ello excluye de su aplicación cualesquiera violaciones de dichos contratos de trabajos cuando las disposiciones generales de la Ley núm. 379 no estén en conflicto con las disposiciones de dichas Leyes especiales. Por esta razón declara como horas "extras", las horas que el empleado trabaja para su patrono, en exceso del máximo de horas de labor diaria que la Junta de Salario Mínimo haya fijado para la correspondiente industria; las horas que un empleado trabaja para su patrono durante los días u horas en que el establecimiento donde presta servicio deba permanecer cerrado; las horas que el empleado trabaja para su patrono durante el día de descanso, (art. 4). En cuanto a las industrias cubiertas por la Ley de Normas Razonables del Trabajo, sabido es que la sec. 18 de la Ley federal permite la aplicación de Leyes esta-

duales que resulten más beneficiosas al empleado u obrero que la Ley de Normas Razonables del Trabajo: *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269, (*Snyder*), (1948), cita precisa a las págs. 291, 294. Es de notarse que la Ley núm. 379, prohibe la promulgación de cualquier decreto futuro, todo contrato escrito o pacto verbal que fije una duración mayor de ocho horas a la jornada de trabajo, (art. 6).

Al adoptar la Ley núm. 379, la anterior Legislatura de Puerto Rico combinó el método del salario-tipo, aunque sin fijarlo numéricamente, de la Ley de 1ro. de julio de 1931 sobre la jornada de Trabajo de España; con el método de horas extraordinarias, sistema de penalidad adicional y fiscalización de la contabilidad patronal de la Ley de Normas Razonables del Trabajo, (29 U.S.C.A. 1 *et seq.*, secs. 203 *et seq.*), remodernizando a su vez, algunas de las viejas disposiciones sobre permisos para trabajos especiales de la anterior Ley núm. 49 de 7 de agosto de 1935. Leyes Sociales de España pág. 169, (ed. del Instituto Editorial Reus de 1951). En cuanto a salario-tipo se refiere, la Ley núm. 379 empezó por establecer un tipo ideal de salario, el salario prevaleciente en enero de 1948 (art. 11), prohibiendo a los patronos rebajar el mismo para acomodarlo tanto al pago de las horas regulares como el pago de las horas extraordinarias. Después fijó el método a seguirse para determinarlo: dividir el salario recibido por el número de horas regulares trabajadas. El hecho de que no se fijara un salario mínimo progresivo como lo hizo la Ley de Normas Razonables del Trabajo no significa que fuera su propósito dejar fuera de su reglamentación todo lo referente a salarios por horas regulares. La Legislatura de Puerto Rico, después de fijar un tipo ideal de salario, el prevaleciente en enero de 1948, prefirió autorizar la fijación variable del salario para horas regulares mediante el estudio económico realizado por un organismo del gobierno, en cuanto a la declaración de un salario mínimo, o mediante convenios colectivos negociados a través de las uniones obreras o unidades contratantes reconocidas de acuerdo con las disposiciones de

la Ley de Relaciones del Trabajo, y aún mediante la contratación espontánea entre patronos y obreros, pero para los últimos tres casos, que son los no cubiertos por la acción gubernamental de la Junta de Salario Mínimo, fijó no solamente el número de horas que debía trabajar cada empleado u obrero, sino la forma de computar en cada contrato de trabajo el salario-tipo, tanto para las horas regulares como para las horas extraordinarias. Esto es lo que se desprende de los arts. 5, 6, 7 y 8 de la Ley núm. 379.

Como se ve la Ley núm. 379 no es estrictamente hablando una ley de horas extraordinarias y nada más, como lo era la Ley núm. 49 de 7 de agosto de 1935, ((1) pág. 539), a la cual derogó. La razón por la cual la Ley núm. 49 era una ley de horas y nada más, es que todavía en el 1935 se entendía, que cualquiera disposición sobre fijación de salario mínimo o salario-tipo resultaría inconstitucional, por ser contraria a la libre contratación. No fué hasta que se falló por la Corte Suprema de Estados Unidos el caso de *West Coast Hotel* v. *Parrish*, 300 U. S. 379, 81 L. Ed. 703, (*Hughes*), (1937), cita precisa a las págs. 392–393 U. S., 709 L. Ed. que se declaró constitucional el ejercicio del poder sanitario del Estado para regular los salarios en los contratos de trabajo. Por eso la Ley núm. 379 reguló no solamente las horas de la jornada de trabajo, sino también el salario-tipo, tanto para horas regulares como para horas extraordinarias.

La Ley núm. 379, aunque tiene el carácter de ley estadual, cubrió en nuestro país el mismo espacio que cubrió la Ley de Normas Razonables del Trabajo en el ámbito interestatal. La Ley de Normas Razonables del Trabajo tiene tres objetivos fundamentales: (1) establecer un salario mínimo; (2) desalentar el empleo de empleados y obreros para una jornada larga de trabajo proveyendo el pago de un salario por horas extraordinarias a un tipo no menor de una y media vez el salario regular por hora; (3) desalentar el empleo de menores: véase "La Corte Suprema y la Ley de Normas Razonables del Trabajo" de E. Merrick Dodd, 59 Harv. L. Rev.

321, cita precisa a la pág. 371. Ya hemos visto que los propósitos de la Ley núm. 379, según su título son: (1) establecer la jornada de trabajo en Puerto Rico; (2) proveer el pago de un tipo doble de salario por las horas trabajadas en exceso de la jornada legal; (3) fijar períodos de descanso; (4) reglamentar ciertos aspectos del contrato de trabajo; (5) imponer ciertos deberes a los patronos y (6) señalar penalidades por la violación de las disposiciones de dicha ley.

La analogía en cuanto al propósito de desalentar la jornada larga que existe entre la Ley de Normas Razonables del Trabajo y nuestra Ley núm. 379 se demuestra con toda claridad, en la exposición de motivos que tiene la Ley núm. 379: "es política de esta ley limitar a un máximo de ocho horas la jornada legal en Puerto Rico y proveer el pago de un tipo doble de salario para las horas trabajadas en exceso de la jornada legal. La experiencia demuestra que no basta una disposición prohibitiva para lograr la limitación interesada. La pena impuesta al patrono que viola el precepto prohibitivo no aprovecha al empleado ni recompensa su esfuerzo cuando la jornada se prolonga. De alcance más efectivo y práctico resulta el pago por imperio de ley de una doble retribución por las horas trabajadas en exceso de la jornada legal. Tal medida a la par *que desalienta el empleo* de horas extras, por razón de la carga económica adicional que impone al patrono, conlleva una compensación más justiciera para el hombre forzado a rendir una jornada mayor".

Si se examinan conjuntamente la Ley creando la Junta de Salario Mínimo de Puerto Rico, la Ley núm. 379 de 15 de mayo de 1948 y las Leyes regulando el trabajo de mujeres y niños en ocupaciones peligrosas y reglamentando el empleo de menores además de disponer la asistencia obligatoria de los niños de Puerto Rico a las escuelas públicas, se verá que la anterior Legislatura de Puerto Rico ha cubierto el mismo espacio en estas leyes que cubrió la Ley de Normas Razonables del Trabajo. Sólo que en vez de hacerlo en una sola ley lo hizo en varias leyes, pero como son leyes *in pari ma-*

*teria*, debemos aplicar la regla de hermenéutica contenida en el art. 18 del Código Civil de Puerto Rico que dispone: "las leyes que se refieran a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos puede ser tomado para explicar lo que resulte dudoso en otro".

Cualquiera ley puede ser racionalizada en una forma o en otra. Lo que hay que procurar es que la racionalización resulte lo más justiciera y lo más jurídica posible dentro de los propósitos que inspiran la ley.

En todo contrato de trabajo, generalmente hablando, el Estado lo que se propone es que el obrero reciba una compensación justa, tanto por las horas regulares de trabajo como por las horas extraordinarias de trabajo. Las leyes de salario mínimo, o de salario-tipo, o de salario comparado con los salarios que generalmente se paguen en e lsitio donde se rinde la tarea, (art. 19, sub-tópico "contrato de trabajo"), lo que se proponen es garantizar una compensación razonable por las horas regulares de trabajo. Las leyes referentes a la jornada de trabajo lo que se proponen es garantizar una compensación razonable "para el hombre forzado a rendir una jornada mayor".

La correlación que existe entre horas regulares y horas extraordinarias es tan estrecha, que no se puede concebir una ley, que sin determinar lo que son horas regulares, declare lo que son horas extraordinarias. Igual sucedería en cuanto a los salarios: sin establecer en alguna forma cuál es el salario para horas regulares, no habría forma de determinar el salario para horas extraordinarias.

Las indemnizaciones de daños y perjuicios por violación de un contrato de trabajo no son nada más que medidas coercitivas incluídas en una ley para obligar al cumplimiento de sus propósitos. ¿Resultaría justo pensar, que por haber decidido el legislador penalizar al patrono que no cumpla con las disposiciones sobre horas extraordinarias, estuvo conforme en no penalizarlo por no cumplir con las disposiciones sobre horas

regulares? ¿Resulta jurídico distinguir por nuestra cuenta, aunque la ley no distinga, con vista a la indemnización prescrita en el art. 13 de la Ley núm. 379, entre horas regulares y horas extraordinarias, a pesar de la letra clara de la ley que ordena: "todo empleado que reciba una compensación menor que la fijada en esta ley para horas regulares y horas extras de trabajo, tendrá derecho a recobrar de su patrono mediante acción civil las cantidades no pagadas, más una suma igual por concepto de liquidación de daños y perjuicios?"

La Ley núm. 379 fija compensación para horas regulares de trabajo. Por el art. 3 se establece lo que son horas regulares de trabajo. Por el art. 5 se establece el método para computar la compensación por hora regular: dividiendo el salario diario, semanal, mensual o en cualquiera otra forma estipulado por el número de horas regulares que se trabaje, de acuerdo con las disposiciones sobre horas de la propia Ley núm. 379. Si no se hubiese estipulado salario, se utilizará como base para la compensación por hora regular, el salario mínimo fijado para la ocupación, industria o negocio en cuestión por la Junta de Salario Mínimo, (art. 19 sub-tópico "contrato de trabajo"). Si no hubiera estipulación expresa por las partes en cuanto al salario, ni estuviera éste fijado por la Junta de Salario Mínimo, se usará como base para la compensación "el salario que suele pagarse en la localidad por trabajos similares", (art. 19 igual sub-tópico). De manera que no se puede sostener que la ley no fija compensación para horas regulares. Si no la fijara, no tendría ninguna base para fijar la compensación por horas extraordinarias.

La indemnización de daños y perjuicios que contiene la Ley núm. 379 es igual a la que contiene la Ley de Normas Razonables del Trabajo y la Ley creando la Junta de Salario Mínimo. El propósito legislativo que hay detrás de dichas indemnizaciones es evitar la evasión en el cumplimiento de los contratos de trabajo. Tratándose como se trata de Leyes reparadoras, tendentes a promover el bienestar general de la comunidad, las mismas deben interpretarse liberalmente en

favor del sujeto del derecho a beneficio del cual se han promulgado, en estos casos, el obrero. El art. 13 de la Ley núm. 379 es una disposición de ley de naturaleza tanto sustantiva como adjetiva, de aplicación general a todo contrato de trabajo, puesto que casi todos los aspectos del contrato de trabajo, no regidos por leyes especiales, están cubiertos por la Ley núm. 379.

Se ha sugerido la posibilidad de que la indemnización por incumplimiento del pago de horas regulares, en aquellas industrias cubiertas por un decreto mandatorio de la Junta de Salario Mínimo, se haga a base del tipo de salario mínimo por hora regular fijado en el decreto y no a base del tipo de salario mayor por hora regular fijado en el convenio colectivo o en el contrato escrito o verbal concertado por las partes. La situación es análoga a cuando se trata de horas extraordinarias. Cuando se trata de horas extraordinarias se ha resuelto que la compensación deberá computarse a base del salario acordado y no del salario mínimo: *Overnight Motor Transp. Co.* v. *Missel*, 316 U. S. 572, 86 L. Ed. 1682, *(Reed)*, (1942), cita precisa a las págs. 1687–1688 L. Ed. No vemos razón por la cual podamos hacer una distinción contraria cuando se trate de horas regulares, que son las horas que sirven de base a la computación de las horas extraordinarias. Sabido es que el salario mínimo no es un salario al tope; y por lo tanto, no debe servir de base para la computación de horas, si las partes han contratado otra compensación.