ALFREDO NAZARIO, ETC., peticionario, *v.* TRIBUNAL SUPERIOR, SALA DE SAN JUAN, HON. J. RIVERA BARRERAS, JUEZ, demandado; HOTEL AMERICANA OF PUERTO RICO, INC., interventor.

*Número:* O-69-105          *Resuelto:* 17 de marzo de 1970

*Manuel Janer Mendía, Ángel Alfonso Colón, I. Felipe Martir Soto, Rafael A. Marzán Robles, Mario Morales Reyes, Ruy N. Delgado Zayas* y *Fernando Román Concepción,* abogados del peticionario; *González, Jr., González Oliver & Morán* y *José M. Biaggi Junquera,* abogados del interventor.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

En 21 de diciembre de 1966 el Secretario del Trabajo de Puerto Rico compareciendo "en representación y para beneficio" de varios empleados del Hotel Americana de esta ciudad, presentó en el Tribunal Superior, Sala de San Juan, una querella sobre reclamación de salarios. La reclamación cubre el período desde el año 1956 al años 1965. ([1])

Presentada una moción de desestimación por la querellada, el Tribunal Superior, mediante una resolución fundamentada de 27 de junio de 1968, la declaró con lugar por la razón de que el convenio colectivo bajo el cual las partes operaban proveía para la solución mediante arbitraje de todas las disputas que surgiesen con motivo de dicho convenio. El Tribunal declaró sin lugar la querella sin perjuicio de que los querellantes se acogiesen al procedimiento de arbitraje establecido en el convenio colectivo.

El Secretario del Trabajo presentó una moción de reconsideración y mediante su resolución de 13 de marzo de 1969 el tribunal de instancia dejó sin efecto su resolución anterior por la cual había declarado sin lugar la querella y declaró la moción de reconsideración con lugar en parte y sin lugar en parte. La declaró con lugar en cuanto al período de 1956 al

---

([1]) Ni la querella ni su Exhibit A describen dicho período en más detalle. A pesar del largo período cubierto por la misma, por ser pequeñas sus partidas, sólo suman en total $2,688.89.

25 de enero de 1963, reclamación ésta sobre la cual determinó que no había que someterla a arbitraje, y sin lugar en cuanto al período posterior a dicha fecha, reclamación sobre la cual determinó que había que someterla a arbitraje. Se basó el tribunal en lo resuelto por este Tribunal en *Pérez* v. *Autoridad Fuentes Fluviales*, 87 D.P.R. 118 (1963), en *Withington* v. *R.C.A. Communications, Inc.*, R-64-148, Sentencia de 18 de marzo de 1966, y en el texto del convenio colectivo. El Tribunal declaró sin lugar una segunda moción de reconsideración de la querellada interesando que el tribunal dictaminase que toda la reclamación debía ser sometida a arbitraje.

El peticionario alega que el tribunal de instancia cometió los siguientes cuatro errores:

1. Que fraccionó el caso dividiendo en dos foros la reclamación.

2. Que no consideró el carácter sumario de este tipo de reclamación y el carácter de demandante del Secretario del Trabajo.

3. Que no consideró la política pública envuelta en la Ley de Salario Mínimo, en la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. secs. 3118 y ss.), en los decretos mandatorios y en la capacidad del Secretario en estas reclamaciones.

4. Que erró al dejar parte del caso a ser resuelto por arbitraje.

Los errores señalados no se cometieron. Como el error del Secretario es básicamente uno de enfoque vamos a exponer la situación y luego señalaremos conclusiones específicas sobre el caso y sobre los errores señalados.

■ En *Pérez*, supra, decidimos que las controversias sobre salario pueden ser sometidas al procedimiento de.arbitraje o excluidas de dicho procedimiento, según se pacte en el convenio colectivo. En dicho caso decidimos que lo allí establecido se aplicaría sólo prospectivamente "por entender que. las

cláusulas de arbitraje de los convenios ya hechos no fueron redactados y aprobados por las partes teniendo en mente la regla que [allí] enunciamos." La fecha de nuestra decisión de *Pérez* es 25 de enero de 1963. Eso explica que en el caso de autos el tribunal de instancia la tomara como fecha divisoria en su antes mencionada resolución de 13 de marzo de 1969.

En *Withington* v. *R.C.A. Communications*, supra, ante una situación un tanto parecida a la del caso de autos, expresamos que la reclamación que cubría períodos anteriores al 25 de enero de 1963 no tenía que ir a arbitraje pero que la reclamación que surgiese de un convenio posterior a esa fecha, y que estuviese cubierta por una cláusula de arbitraje, estaría sujeta a arbitraje.

Ya hemos establecido que el arbitraje, como los comités de quejas y agravios y como los tribunales son distintos mecanismos o foros apropiados para dilucidar ciertas controversias obrero-patronales y que estas controversias pueden ser sobre salarios, si así se pacta, pero una vez dilucidadas ante el foro pactado en el convenio, las leyes determinan la forma en que esos salarios han de pagarse. Por eso el derecho a cobrar los salarios adeudádoles, al tipo que ordena la ley, no lo pierden los empleados por haber pactado recurrir a arbitraje. Las disposiciones de ley sobre horas y salarios encarnan la política pública del país sobre esas cuestiones, forman parte del contrato de trabajo y los laudos de arbitraje no pueden contravenirlas. *Beauchamp* v. *Dorado Beach Hotel*, 98 D.P.R. 633 res. en 12 de febrero de 1970; *Martínez* v. *Commonwealth Oil Ref.*, 92 D.P.R. 693 (1965); *Encarnación* v. *Jordán*, 78 D.P.R. 505 (1955).

Estima el Secretario que resolver en el sentido que resolvió el Tribunal Superior, sosteniendo la fuerza y validez de la negociación colectiva—el convenio es su producto y el arbitraje es parte de ella y es su continuación—sería "dar un brinco hacia atrás en las merecidas conquistas de las masas

trabajadoras." Vamos a examinar esta idea pues constituye el pensamiento subyacente que aparentemente motiva los planteamientos que aquí hace el Secretario. Creer que resolver sosteniendo la supremacía, dentro de los límites de la ley desde luego, de la negociación colectiva y de sus consecuencias es un retroceso, implica a nuestro juicio una visión superficial del problema y un concepto inadecuado de la función del arbitraje en las relaciones obrero-patronales.

Las relaciones entre las clases obrera y patronal, en tanto en cuanto esas clases tienen intereses encontrados (el empeño de cada una de sacar lo más posible de su aportación), generan cierto grado de tensión. Esta tensión puede ser a veces muy poca y a veces puede ser crítica. La negociación colectiva es una manera social y pacífica de hacer tolerable esa tensión y de mantener las relaciones obrero-patronales operando en forma fructífera. Es social porque no es individual. La experiencia demostró que los obreros individualmente no podían enfrentarse a la fuerza económica del patrono. Pero por su gran número, dentro del sistema democrático, los obreros tienen gran fuerza política. Cuando adquirieron conciencia de ello, pudieron convertir esa fuerza política en legislación obrera. Justo es señalar que para ello contaron con frecuencia en todas partes con el liderato de personas provenientes de las clases altas pero liberales de pensamiento. La legislación obrera garantizó el derecho a unionarse y a negociar colectivamente. Pero esos derechos, como ocurre con todo derecho, no se realizan por sí solos. Es necesario que alguien los reclame, los ejerza y los defienda. Ese es el rol del movimiento obrero y de las uniones obreras.

Sin un movimiento obrero suficientemente fuerte que los invoque y los ejerza, esos derechos tendrían muy poca efectividad. Ya es una realidad en nuestro medio la existencia de uniones obreras fuertes y activas. Sólo pueden mantenerse así si se les deja ejercer su función.

■ La política pública tanto en los Estados Unidos como en Puerto Rico y en otros países favorece la negociación colectiva y sus mecanismos de resolver internamente sus problemas porque ese es el medio de mantener una razonablemente pacífica y fructífera paz industrial y porque es la forma en que se ejercitan y se desarrollan el movimiento obrero y sus uniones, cosa que se considera deseable por ser útil y justa. Véanse las siguientes expresiones legislativas de Puerto Rico y de los Estados Unidos.

Puerto Rico: El Art. 1 de nuestra Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 62, luego de expresar que la política pública del Gobierno de Puerto Rico en lo que respecta a las relaciones obrero-patronales consiste en desarrollar la negociación colectiva como uno de los instrumentos hacia la mayor producción y hacia un más alto nivel de vida y luego de expresar que los términos y condiciones de empleo deberán fijarse a través de dicha negociación colectiva, expresa que los convenios colectivos están revestidos de interés público y que "es la política del Gobierno eliminar las causas de ciertas disputas obreras fomentando las prácticas y procedimientos de la negociación colectiva." Como se sabe, los procedimientos de arbitraje son parte de esa negociación colectiva.

Estados Unidos: El Congreso de los Estados Unidos ha expresado en la Labor Management Relations Act, 29 U.S.C. sec. 171 (a) que:

"It is the policy of the United States that sound and stable industrial peace and the advancement of the general welfare, health, and safety of the Nation and of the best interests of employers and employees can most satisfactorily be secured by the settlement of issues between employers and employees through the processes of conference and collective bargaining between employers and the representatives of their employees."

También ha expresado el Congreso que:

"Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an

existing collective-bargaining agreement."—29 U.S.C. sec. 173 (d).

Esa política pública legislativa de nuestra Asamblea Legislativa y del Congreso de los Estados Unidos ha recibido amplio respaldo en las decisiones judiciales de los más altos tribunales de ambos países. Así por ejemplo, refiriéndose a las expresiones congresionales antes citadas, el Tribunal Supremo de los Estados Unidos expresó que "esa política pública sólo puede realizarse si se le da libre juego a los medios acordados por las partes en sus convenios colectivos para la solución de sus disputas." *United Steelworkers of America* v. *American Manufacturing Co.*, 363 U.S. 564, 566 (1960). Véanse también *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *Textile Workers Union of America* v. *Lincoln Mills of Alabama*, 353 U.S. 448 (1957); *Republic Steel Corp.* v. *Maddox*, 379 U.S. 650 (1965); *Junta Relaciones del Trabajo* v. *New York & P.R. S/S Co.*, 69 D.P.R. 782 (1949); *Junta Relaciones del Trabajo* v. *I.L.A.*, 73 D.P.R. 616 (1952); *Encarnación* v. *Jordán*, 78 D.P.R. 505 (1955); *Rivera Adorno* v. *Autoridad de Tierras*, 83 D.P.R. 258 (1961); *Pérez* v. *Autoridad Fuentes Fluviales*, 87 D.P.R. 118 (1963); *Martínez* v. *Commonwealth Oil Ref. Co., Inc.*, 92 D.P.R. 693 (1965).

Hay mucho de bueno (paz industrial, fortalecimiento del movimiento obrero, educación en los procesos democráticos y pacíficos de resolver controversias) y nada de malo en permitir, como lo han hecho los tribunales, dentro de los amplios límites de la ley y de la Constitución, el libre y legítimo juego de los procedimientos acordados por las partes en los convenios colectivos. Hacer eso es, si se quiere usar la frase, lo "liberal." [2] Lo contrario es lo que pretende en este

---

[2] Usamos la frase con perdón de los lectores intelectualmente exigentes a quienes les repugnará, como nos repugna a nosotros, el uso de términos, etiquetas o motes en lugar del análisis racional de los problemas sociales.

caso el Secretario. Un exceso de paternalismo, que no deje funcionar los procedimientos acordados por las partes, en vez de beneficiar a los obreros los perjudica pues no deja desarrollarse el movimiento obrero y sus instrumentos indispensables: las uniones y la negociación colectiva.

En otras palabras, si se alienta la costumbre de que los obreros dependan del gobierno para aquellas cosas que pueden y deben hacer las uniones obreras se les hace un flaco servicio pues se le debilitan sus mejores instrumentos de lucha y protección. Esos instrumentos, las uniones obreras y la negociación colectiva, representan en última instancia la garantía de que sus derechos serán siempre defendidos, pues si un gobierno no quisiese legislar sobre salarios o llevarle sus casos los obreros quedarían indefensos a no ser por contar con organizaciones obreras bien organizadas y administradas que les defendiesen sus derechos en la mesa de negociación y en los tribunales administrativos y judiciales. No dejarlos actuar por sí mismos, por excesivo paternalismo, atrofiaría sus medios de defensa así como se atrofia el músculo que no se usa.

En nada peligran las conquistas ya legisladas sobre salarios y horas de trabajo, o cualesquiera otras, dejando funcionar dentro de ley a los organismos obreros y a la negociación colectiva. Dichas conquistas quedan plenamente en vigor pues, como hemos señalado antes, constituyen parte de la política pública y no pueden ser contravenidas ni por los contratos ni por los laudos. Para propiciar el desarrollo y madurez del movimiento obrero y la paz industrial, se debe dejar a las partes que mediante la negociación colectiva acuerden la forma en que desean resolver sus controversias.

Es universalmente reconocido que el arbitraje es más deseable para la solución de las disputas obrero-patronales que la litigación. El arbitraje es más rápido, menos costoso, menos técnico y más apropiado para decidir las disputas industriales que la litigación. En vez de litigar costosamente

por varios años el arbitraje produce soluciones justas y económicas en términos de una o varias semanas. Tomemos este mismo caso de autos como ejemplo. En este caso la querella se presentó en el Tribunal Superior en 21 de diciembre de 1966. La resolución objeto de este recurso es de 13 de marzo de 1969. La sentencia de este Tribunal lleva fecha de 17 marzo de 1970. Hace ya más de tres años que el asunto se está litigando y todavía no se ha resuelto nada sobre los méritos del mismo. Terminado este incidente de *certiorari*, ahora es que se comenzará a trabajar sobre los méritos. La parte de la reclamación que hay que arbitrar podrá quedar resuelta en varias semanas, pero ¿quién sabe cuándo quedará definitivamente decidida la parte que se litigará judicialmente? Si el caso hubiese sido sometido a arbitraje cuando se presentó la querella en diciembre de 1966, pudo haberse resuelto en los méritos a principios de 1967.

Cabe añadir que las relaciones obrero-patronales del país no pueden estar sujetas a una regla tan injusta y desigual como la que el Secretario pretende que adoptemos. Ésta sería en el sentido de que mientras una parte contratante queda obligada por el convenio colectivo a someterse a arbitraje, la otra parte puede, mediante la intervención de los abogados del Departamento del Trabajo, evadir su obligación contractual de ir a arbitraje. La idea en sí es contraria a las más básicas nociones de justicia. Al hacer jurisprudencia sobre una materia que se ha ido desarrollando en tan gran medida mediante el derecho jurisprudencial nuestra jurisprudencia tiene que estar informada por un pensamiento consistente y sistemático.

Regresando por un momento a los errores señalados, queremos indicar que fraccionar un caso *per se* no constituye un error. Todo depende de las circunstancias de cada caso en particular. En este caso fue necesario hacerlo. Tampoco cometió el tribunal de instancia los errores segundo y tercero porque sus tres resoluciones mencionadas al comienzo de esta

opinión demuestran que en efecto dicho tribunal consideró la política pública envuelta en la legislación y en la jurisprudencia sobre esta materia. En nada alteramos lo dicho en *Sierra* v. *Tribunal Superior*, 81 D.P.R. 554 (1959). Allí, en un pleito que llevaba el Secretario del Trabajo en representación de varios obreros, el patrono le sometió un extenso y detallado interrogatorio a cada uno de aquellos. Sobre el particular resolvimos que "en cuanto a los trámites procesales" la parte adversa era el Secretario y que era a éste a quien correspondía contestar los interrogatorios. Debe ser claro que en una controversia de esta naturaleza, que se esté ventilando en un tribunal de justicia y en donde a veces el Secretario representa a un número considerable de trabajadores, consideraciones de orden y de economía de trámite indican que debe ser el Secretario como representante de los trabajadores el que conteste los interrogatorios.

■ El cuarto error tampoco tiene mérito. Como hemos visto, recurrir al arbitraje no es un peligro del cual hay que huir sino una buena práctica obrero-patronal que hay que fomentar.

*Por las razones antes dichas se confirmará la resolución del Tribunal Superior, Sala de San Juan, dictada en este caso en 13 de marzo de 1969 y se anulará el auto expedido.*

El Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Santana Becerra y Blanco Lugo no intervinieron.