Opinión disidente emitida por el
Juez Asociado Señor Fuster Berlingeri, a la cual se une la Juez Asociada Señora Fiol Matta.
Como muy bien señala la mayoría del Tribunal en su opinión, el término fijado en un convenio colectivo para iniciar un proceso de quejas y agravios persigue el fundamental objetivo de “ponerle fin a las disputas obrero patronales rápidamente para de esa forma propiciar la paz industrial”.
No cabe duda de que en nuestro país la política pública imperante desde hace muchas décadas en el campo de las relaciones obrero-patronales ha sido la de propiciar “una razonablemente pacífica y fructífera paz industrial, ... cosa que se considera deseable por ser útil y justa”. Nazario v. Tribunal Superior, 98 D.P.R. 846, 851 (1970). Véanse, además: J.R.T. v. Junta Adm. Muelle Mun. de Ponce, 122 D.P.R. 318, 333 (1988); U.I.L. de Ponce v. Dest. Serrallés, Inc., 116 D.P.R. 348, 352 (1985); Pérez v. Autoridad de Fuentes Fluviales, 87 D.P.R. 118, 124 (1963); P.R. Tele *698 phone v. Junta Rel. Trabajo, 86 D.P.R. 382, 395-396 (1962). Se ha procurado sobre todo “eliminar en lo posible las disputas obreras” —Morales González v. J.R.T., 121 D.P.R. 249, 270 (1988)— por estimarse que tienen el potencial de “pone[r] en peligro la vida misma de la comunidad por sus efectos nocivos en la estructura básica de su economía ...”. Junta de Rel. del Trabajo v. I.L.A., 73 D.P.R. 616, 644 (1952).
En el caso de autos, encaramos la acción de una unión que evidentemente procuró honrar la fundamental política pública aludida antes. La Unión General de Trabajadores (U.G.T.) actuó conforme a lo requerido para mantener la paz industrial: no se precipitó a fraguar una disputa laboral. Sin embargo, la mayoría del Tribunal en su decisión en el caso de autos falla en apreciar correctamente el referido proceder de la unión. Veamos.
La U.G.T. se enteró del nombramiento por el patrono, la Corporación de Puerto Rico para la Difusión Pública, de un operador de equipo de televisión a quien se le concedió un salario superior al que tenían otros operadores de tal equipo nombrados anteriormente por dicho patrono. La unión procedió entonces a preguntar al patrono sobre la justificación para tal disparidad salarial. Inquirió por qué, si todos los operadores referidos tenían funciones similares, se le había otorgado al último operador que la compañía había contratado un salario superior al de los otros operadores que ésta ya empleaba. La compañía contestó el cuestionamiento referido y dio sus razones para la disparidad salarial referida el 9 de septiembre de 1997. El 18 de septiembre de 1997, sólo siete días laborables después de que la compañía contestara la indagación de la unión, la U.G.T. presentó la correspondiente queja sobre el particular, e inició así el procedimiento de arbitraje provisto en el convenio colectivo existente entre la compañía y la unión.
Hoy una mayoría del Tribunal resuelve que la queja en cuestión se presentó tardíamente y que por ello no era arbitrable. Decreta la mayoría del Tribunal que la queja *699 referida tenía que ser presentada dentro del término de siete días laborables, contados a partir del momento en que a U.G.T. se enteró de la disparidad salarial en sí.
Este dictamen me resulta enteramente incomprensible. Troncha la ingente política pública mencionada antes que preconiza el logro de la paz industrial. Impone una interpretación al término para presentar quejas e iniciar el arbitraje del convenio colectivo que da al traste con la evidente razonabilidad de la conducta de la unión en este caso.
Nótese que en el momento cuando la U.G.T. se enteró de la disparidad salarial existente entre los operadores de equipo de televisión empleados por la compañía, todavía no existía ninguna controversia ente la unión y el patrono. El asunto no había madurado aún porque la U.G.T. desconocía qué motivos había tenido la compañía para pagar al último operador que había contratado un sueldo superior al que le pagaba a los operadores que ya empleaba. Es sólo al enterarse la unión de las razones ofrecidas por la compañía para justificar la disparidad salarial que surge la disputa laboral. Y lógicamente es sólo en ese momento que empieza a transcurrir el término en cuestión. No podía comenzar a transcurrir dicho término antes sencillamente porque aún la U.G.T. no tenía motivo para diferir del patrono. No fue la mera disparidad salarial lo que provocó la disputa laboral, sino la justificación que ofreció el patrono para tal disparidad.
Es evidente que hubiese sido un grave desmán que la unión protestase la disparidad salarial efectuada por el patrono sin antes indagar qué razones tuvo el patrono para hacer lo que hizo. La unión, pues, actuó razonablemente al indagar sobre el asunto antes de formular su querella. Hoy una mayoría del Tribunal castiga la acción eminentemente legítima de la U.G.T., decretando erróneamente que la unión violó en este caso el término que fija el convenio colectivo para presentar querellas. Se trata de un decreto *700 por puro fíat de este Foro, que en nada promueve la paz industrial. Por todo ello, yo DISIENTO.