CEFERINO PÉREZ, demandante y recurrente, v. AUTORIDAD DE LAS FUENTES FLUVIALES, demandada y recurrida.

Número: 643    Resuelto: 25 de enero de 1963

*Leonardo Llequis* e *Ismael Cardona,* abogados del recurrente; *José C. Ramos Vázquez, Juan F. Doval, Carlos Eduardo Lube* y *Rafael Buscaglia, hijo,* abogados de la recurrida.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Se plantea si un patrono y una organización obrera pueden acordar válidamente en un convenio colectivo que las controversias sobre salarios y horas extra se ventilen y decidan mediante el procedimiento de arbitraje acordado en el convenio. También debemos resolver si, siendo el convenio y la cláusula de arbitraje válidos y no habiéndose excluído del arbitraje lo relativo a salarios, se pueden resolver las controversias sobre salarios y horas extra mediante dicho arbitraje.

El peticionario radicó una querella en reclamación de salarios por concepto de horas extra amparándose en la Ley 379 de 15 de mayo de 1948, 29 L.P.R.A. secs. 271 y ss. y acogiéndose al procedimiento especial de la Ley Núm. 10 de 14 de noviembre de 1917, 32 L.P.R.A. secs. 3101 y ss.[1] El peticionario prestó servicios mediante paga a la querellada desde febrero de 1958 hasta julio de 1961 y trabajó bajo los términos de dos convenios colectivos, el segundo de los cuales comenzó

---

[1] La citada Ley 10 de 1917 fue sustituída por la Ley 2 de 17 de octubre de 1961, 32 L.P.R.A. (Supl.) secs. 3118 y ss.

a regir inmediatamente después de expirado el primero. Se trata de dos convenios colectivos formales acordados libremente entre la querellada y la "Unión Insular de Trabajadores de la Construcción, Afiliada a la Federación Libre de los Trabajadores de Puerto Rico." Dichos convenios contienen disposiciones sobre vacaciones, taller unionado, semana de trabajo, seguro de vida, salarios, plan de servicios médicos, de hospitalización y de medicinas, permanencia en el trabajo, períodos de descanso, licencia con paga para atender asuntos de la unión, garantía de compensación mínima, dietas, días festivos, compensación extraordinaria, etc. y su Art. VII (igual en ambos convenios) titulado "Comité de Ajuste" lee como sigue:

"Por la presente se crea un Comité de Ajuste ante el cual deberán apelarse *todas aquellas querellas o reclamaciones que puedan surgir en relación con las disposiciones de este convenio* y que no hubieren sido resueltas por los representantes de la Unión y la Autoridad en cada localidad, ni en la escala superior a ésta. Este Comité estará integrado por dos representantes de la Autoridad designados por ella y dos representantes designados por la Unión. El Comité de Ajuste tendrá poderes para hacer cualquier investigación relacionada con los casos que vengan a su consideración y resolverá los mismos por mayoría. En aquellos casos en que el Comité de Ajuste no pueda llegar a un acuerdo dentro de treinta días de sometida la reclamación o querella a su consideración, se designará por unanimidad del mismo un quinto miembro y las decisiones del Comité así constituido serán finales para las partes; *Disponiéndose,* que en caso de que el Comité de Ajuste no pueda ponerse de acuerdo sobre el quinto miembro se designará automáticamente a un miembro del Servicio de Conciliación para que rinda cualquier laudo en toda querella o caso que se le someta. Después de resuelta cualquier reclamación o querella, el Comité de Ajuste deberá enviar un informe completo del mismo a la Autoridad y a la Unión." (Subrayado nuestro.)

El peticionario, miembro de la unión contratante, recurrió a los tribunales sin antes acudir al Comité de Ajuste. El Tribunal de instancia al encontrar que el peticionario no se ha-

bía valido del remedio provisto por el Art. VII de los convenios colectivos en cuestión, a solicitud de parte, y a tenor con lo resuelto por nosotros en *Junta Relaciones del Trabajo* v. *N.Y.&P.R.S̈.S. Co.*, 69 D.P.R. 782 (1949) y *Rivera Adorno* v. *Autoridad de Tierras*, 82 D.P.R. 258 (1961), desestimó la querella.

El peticionario señala los siguientes dos errores: (1) "Erró el Tribunal al concluir que el hecho de que exista un convenio colectivo, que contenga una cláusula sobre Comités de Ajuste, derrota el derecho constitucional del obrero a reclamar judicialmente el pago de las horas extras en exceso de la jornada legal más la penalidad que impone la ley para adjudicarse judicialmente." (2) "Erró el Tribunal al concluir que aplica a este caso la doctrina sentada por este Honorable Tribunal Supremo en el caso de Rivera Adorno v. Autoridad de Tierras." No cuestiona el querellante lo que resolvimos en *Rivera Adorno*, supra, pero argumenta que él puede hacer caso omiso de la cláusula de arbitraje del convenio, porque su derecho a recibir paga extraordinaria por trabajo en exceso de la jornada de ocho horas está garantizado por la Constitución de Puerto Rico.[2]

■ El convenio colectivo es la ley entre las partes, siempre y cuando no contravenga las leyes ni la Constitución. Con la limitación mencionada, es la ley de la industria o factoría concernida. Se ha dicho que constituye un esfuerzo para crear un gobierno propio para la industria. *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579–580 (1960). ¿Son contrarios a la ley o a la Constitución los convenios que nos ocupan? Salvo lo antes mencionado en el error número 1 que señala el peticionario —a lo que más luego regresaremos— no se nos señala ni nosotros encontramos que haya incompatibilidad alguna entre

---

[2] Para otras disposiciones constitucionales de varios estados sobre jornada legal, limitadísimas en sus alcances, véase *Index Digest of State Constitutions*, 2d. ed., 1959, Columbia University, p. 591.

dichos convenios, las leyes y la Constitución. Veamos la situación en lo relativo al pago de horas extra: (a) La Constitución de Puerto Rico, Art. II, Sec. 16, dispone que sólo podrá trabajarse en exceso del límite diario de ocho horas, mediante compensación extraordinaria "que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley." (b) La ley ordena que "todo patrono que emplee o permita que trabaje un empleado durante horas extras vendrá obligado a pagarle por cada hora extra un tipo de salario igual al doble del tipo convenido para las horas regulares;" 29 L.P.R.A. sec. 274([3]) Los dos convenios colectivos bajo los cuales el querellante trabajó disponen para el pago de horas extra a razón del doble del tipo regular de salario que estuviere percibiendo el trabajador. Por lo antes apuntado puede verse que en cuanto al punto que aquí discutimos—horas extra—existe perfecta armonía entre la Constitución, la ley y los convenios colectivos.

Tampoco hay controversia sobre las cláusulas de arbitraje de los convenios. Éstas son claras y sus términos son amplios. Ordenan llevar al Comité de Ajuste *todas* las querellas o reclamaciones que puedan surgir en relación con las disposiciones de los convenios. La materia de salarios y de compensación por horas extra no se excluyó de la facultad del Comité de Ajuste, ni se exceptuó dicha materia del deber de las partes de llevar al Comité todas las querellas o reclamaciones que surgiesen en relación con los convenios.

El peticionario alega que si se le obliga a arbitrar a tenor con lo que pactó en los convenios colectivos, se le derrota su derecho constitucional a reclamar judicialmente el pago de compensación extraordinaria por horas extra. No estamos de acuerdo. Su derecho constitucional a dicha compensación extraordinaria garantizado por la Sec. 16 del Art. II de

---

([3]) No es necesario entrar aquí en las salvedades que hace la ley para las industrias cubiertas por la Ley de Normas Razonables del Trabajo de los Estados Unidos, salvedades que se encuentran en la citada sección.

la Constitución no deroga su derecho *también constitucional* a organizarse y a negociar colectivamente con su patrono, derecho que le garantiza la Sec. 17 del mismo artículo. Fue precisamente en el ejercicio de su derecho constitucional a negociar colectivamente que el peticionario contrató los convenios y las cláusulas de arbitraje que ahora quiere repudiar. La Constitución cubre al peticionario con todas sus cláusulas; no puede invocar una y pretender que las otras no existen.

El convenio y su cláusula de querellas y arbitraje obligan por igual a ambas partes, *Rivera Adorno* v. *Autoridad de Tierras*, supra, p. 264; *Junta* v. *N.Y.&P.R. Steamship Co.*, supra, p. 807 *in fine; Textile Workers Union of America* v. *Lincoln Mills*, 353 U.S. 448, 454. Ya hemos expresado que el reconocimiento de que los convenios colectivos obligan igualmente a los contratantes (esto es, a los obreros y al patrono) fomenta un mayor sentido de responsabilidad en las partes contratantes, lo que a su vez propicia la paz industrial. *Rivera Adorno*, supra, a la p. 265; *Textile Workers*, supra, a la p. 454. Hay aquí envuelta una cuestión de interés público. Nos referimos a las relaciones obrero–patronales, a la negociación colectiva y a los procedimientos de arbitraje. La política pública expresada por la Asamblea Legislativa de Puerto Rico en nuestra Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 62, señala la necesidad de promover la negociación colectiva como un instrumento eficaz para lograr la paz industrial. La experiencia ha demostrado que las relaciones obrero–patronales están muy ligadas a la economía de la sociedad contemporánea y al bienestar general. La negociación colectiva y los procedimientos de querellas y arbitraje por ella establecidos revisten interés público pues son medios directos y eficaces de promover la paz y la estabilidad en la industria, y la distribución más justa de sus frutos. Está establecido sin lugar a dudas que el arbitraje de las controversias laborales bajo los términos de los convenios colectivos

es parte integrante del proceso de negociación colectiva. *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960); *Junta* v. *N.Y.&P.R. S.S. Co.*, supra, p. 795.

■ Acertadamente se expresó la Junta de Relaciones del Trabajo de Puerto Rico al decir: "Consideramos que la solución, de mutuo acuerdo por las partes, de disputas que puedan surgir como consecuencia de la aplicación de un convenio colectivo, es algo altamente deseable. Tales medidas pueden concebirse como la culminación del proceso de la negociación colectiva. . . . Alentar tales prácticas es en la realidad estimular la negociación colectiva. Debe considerarse, además, que cuando las partes incorporan medidas de esta naturaleza en un convenio, han seleccionado el método que en su criterio resulta más apropiado para resolver las controversias que puedan surgir a la luz del contrato. Tales acuerdos deben ser respetados. Por tales razones, esta Junta, cumpliendo con el propósito legislativo, generalmente no entiende en casos de violación de convenio cuando las partes no han agotado los remedios que el mismo convenio ofrece para la solución de tales problemas." *Simmons International, Ltd. y Local 423 of Upholsterer's International Union of North America, AFL-CIO*, 2 D.J.R.T. 250 (1953).

El Congreso de los Estados Unidos también ha hecho declaraciones expresas de política pública sobre el particular manifestando que la dilucidación mediante los procedimientos acordados por las partes es la forma deseable para resolver las controversias que surjan de la aplicación o interpretación de los convenios colectivos. 61 Stat. 153 (1947); 29 U.S.C.A. sec. 173(d). Refiriéndose a esa disposición el Tribunal Supremo de los Estados Unidos expresó que dicha política pública sólo puede realizarse dándole libre juego a los medios o procedimientos acordados por las partes en sus convenios colectivos. *United Steelworkers of America* v. *American Manufacturing Co.*, 363 U.S. 564, 566 (1960). Ese mismo

día, en otro caso, dicho tribunal señaló que la política federal es promover la estabilidad industrial mediante los convenios colectivos y que incluir cláusulas de arbitraje en dichos convenios constituye un factor de primer orden para lograr la paz industrial, *Steelworkers* v. *Warrior & Gulf Co.*, supra, p. 578. Añadió que el convenio colectivo es más que un contrato ya que es una especie de ley de la industria encaminada a resolver múltiples situaciones que son imposibles de prever totalmente. *Ibid.* Véase también *Textile Workers* v. *Lincoln Mills*, 353 U.S. 448, 454-455 (1957); Shulman, *Reason, Contract and Law in Labor Relations*, 68 Harv. L. Rev. 999, 1004-1005; Cox, *Reflections Upon Labor Arbitration*, 72 Harv. L. Rev. 1482, 1498-1499 (1959).

El arbitraje como medio pacífico de resolver controversias es una institución de orígenes remotos. [4] Originalmente los tribunales de derecho común anglosajón le fueron hostiles por razones no muy meritorias, explicadas en *United States Asphalt Refining Co.* v. *Trinidad Lake Petroleum Co.*, 222 F. 1006 (1915); *Kulukundis Shipping Co.* v. *Amtorg Trading Corp.*, 126 F.2d 978 (1942). En nuestro tiempo el arbitraje en las relaciones obrero-patronales cobró gran auge durante los años de la Segunda Guerra Mundial y resultó tan satisfactorio que su utilización voluntaria ha continuado en aumento. [5] En Estados Unidos las controversias resueltas anualmente mediante arbitraje montan a miles. En Puerto Rico, el Secretario del Trabajo en su Informe Anual del año 1958-59 expresa que en el Negociado de Conciliación y Arbitraje de su departamento la actividad de mayor aumento la registró la labor de arbitraje. Ese año el Departamento intervino en 238 casos de arbitraje, el número más alto en

---

[4] Updegraff & McCoy, *Arbitration of Labor Disputes*, 2d. ed., 1961, pp. 3-6; Wolaver, *The Historical Background of Commercial Arbitration*, 83 U. Pa. L. Rev., 132-146; Plucknett, *A Concise History of the Common Law* (1936) pp. 108-114.

[5] Updegraff & McCoy, obra citada, 1 y 8; Updegraff, *The War-Time Arbitration of Labor Disputes*, 29 Iowa L. Rev. 328 (1944).

los 12 años anteriores. (⁶) En el año 1959–60 el Departamento intervino en 294 casos de arbitraje, un número todavía mayor que el precedente. (⁷)

Esto es así porque participantes y observadores, y como hemos visto también los cuerpos legislativos y los tribunales, reconocen generalmente que el arbitraje es un medio más apropiado y deseable para resolver las disputas que surgen de la aplicación e interpretación de los convenios colectivos, que la litigación en los tribunales. Es un medio más rápido y menos costoso que los procedimientos judiciales, y es menos técnico y más flexible que dichos procedimientos. (⁸)

[5] Sobre la arbitrabilidad de la cuestión planteada en este caso podemos señalar que ni la Constitución ni las leyes la prohiben. Como hemos visto, las manifestaciones legislativas, la jurisprudencia y los estudiosos de la materia favorecen que se le dé el mayor libre juego posible a los procedimientos de querellas y arbitraje acordado por las partes, sin más limitaciones que las que las leyes y las propias partes impongan. Así, en *Donahue v. Susquehanna Colleries Co.*, 138 F.2d 3 (1943), un caso parecido en sus planteamientos al de autos, el Tercer Circuito Federal ante un pleito en reclamación de salarios por concepto de horas extra devolvió el caso para que fuese objeto de arbitraje. El convenio en cuestión contenía una cláusula de arbitraje que ordenaba a las partes llevar al comité de quejas las disputas que surgiesen de las relaciones obrero–patronales. Como en nuestro caso, dicha cláusula de arbitraje no contenía disposición expresa alguna sobre salarios. El tribunal expresó que una reclamación de salarios era una controversia "que claramente surgía de las relaciones obrero–patronales" y que estaba cubierta por la cláusula de querellas y arbitraje. Señaló el tribunal que el

---

(⁶) Informe Anual del Secretario del Trabajo, 1958–59, pp. 33–36.

(⁷) Informe Anual, 1959–60, p. 36.

(⁸) *Wilko v. Swan*, 346 U.S. 427, 431; Updegraff & McCoy, obra citada, p. 15.

estatuto no prohibía el arbitraje en esos casos y que si esa hubiese sido la intención el Congreso así lo habría dispuesto. *Ibid*, p. 6. Igualmente se ordenó el arbitraje en otra reclamación de salarios por concepto de horas extra en *Watkins* v. *Hudson Coal Co.*, 151 F.2d 311 (1945), y lo mismo se hizo frente a otra situación igual en *Evans* v. *Hudson Coal Co.*, 165 F.2d 970 (1948), en cuyo caso se citan los casos de *Donahue* y *Watkins*, supra. Véanse además los casos citados en 24 A.L.R.2d 778.

En el caso de *Tuschman Steel Co.* v. *Tuschman*, 181 N.E.2d 322 (1961) también parecido en algunos de sus aspectos al de autos, se trataba de poner en vigor un acuerdo para arbitrar. El demandado alegó que dicho acuerdo violaba el derecho que le garantizaba la constitución de su estado de recurrir a los tribunales estatales. El tribunal expresó, a la p. 327, que el arbitraje no contraviene la Constitución, que meramente ofrece un medio más para resolver controversias, en adición al medio judicial que ofrece la Constitución, y cuyo medio (el arbitraje) las partes escogen libre y voluntariamente. Expresó además que el demandado se obligó voluntariamente a arbitrar y no podía luego reclamar el derecho de acudir a los tribunales. Se ordenó llevar a cabo el arbitraje pactado.

En *Berkovitz* v. *Arbib & Houlberg*, 130 N.E. 288 (1921) el tribunal sostuvo por voz del juez Cardozo que una ley de arbitraje no confligía con el derecho constitucional de acudir a los tribunales. Todo lo que la ley hace, dijo el tribunal, es hacer disponibles dos remedios donde antes sólo había uno.

En junio de 1962 el Tribunal Supremo de los Estados Unidos resolvió una situación parecida en *Drake Bakeries Inc.* v. *Local 50, American Bakery & Confectionery Workers International, AFL-CIO*, 370 U.S. 254 (1962). En ese caso el patrono demandó a la unión en daños y perjuicios alegadamente surgidos con motivo de una huelga hecha en violación del convenio colectivo. El convenio contenía una cláu-

sula que disponía que serían objeto de arbitraje las querellas que surgiesen de la aplicación del convenio y de las relaciones entre las partes. Se resolvió que el patrono venía obligado a someter a arbitraje la controversia.

[6-7] No creemos necesario extendernos más. Si sostuviésemos la posición del peticionario en el sentido de que los derechos que surgen de los convenios se pueden arbitrar pero no los que surgen de la ley o de la Constitución, destruiríamos la negociación colectiva ya que casi todos los derechos que surgen de los convenios colectivos, o por lo menos los más importantes, —derecho a compensación, a vacaciones, a compensación extraordinaria por horas extra, a días de descanso, a días feriados, a reconocimiento de las uniones y de los representantes de los obreros, a condiciones humanas y saludables de trabajo, etc.— se pueden conectar en una forma u otra con la Constitución o con las leyes. Como expresó el Tribunal Supremo de los Estados Unidos en *Steelworkers* v. *Warrior & Gulf Co.*, supra, p. 581, "excepto los asuntos que las partes específicamente excluyen del procedimiento de querellas y arbitraje pactado en el convenio colectivo, todas las controversias entre ellas caen dentro de dicho procedimiento. Ese procedimiento es, en otras palabras, parte y continuación de la negociación colectiva."

Resolvemos por tanto en la afirmativa los dos planteamientos que hicimos en el primer párrafo de esta opinión, o sea (1) que un patrono y una organización obrera pueden acordar válidamente en un convenio colectivo que las controversias sobre salarios y horas extra se ventilen y decidan mediante el procedimiento de arbitraje acordado en el convenio, y (2) que bajo un convenio válido y una cláusula de arbitraje que exprese que todas las querellas o reclamaciones que surjan o que puedan surgir en relación con o con motivo de las disposiciones del convenio y de cuya cláusula de arbitraje no se excluya lo relativo a salarios, se pueden resolver y se resolverán las controversias sobre salarios y horas extra mediante dicho arbitraje.

■■■ Ratificamos lo dicho en *Junta* v. *N.Y.&P.R. Steamship Co.*, supra, a las págs. 800–802 en el sentido de que un laudo no puede anularse por errores ya sean éstos en cuanto a la ley o en cuanto a los hechos, pues las partes que firman un convenio de esta naturaleza deben comprender que han sustituído al comité o al árbitro por los tribunales para la determinación de todas las cuestiones de hecho y de derecho sustantivo. Como excepción a lo dicho, cuando se especifique expresamente en el convenio que todo asunto sometido al Comité o al árbitro, o que determinadas materias que se señalen, según sea el caso, deberán ser resueltas de acuerdo a derecho, los laudos podrán ser revisados judicialmente por errores de derecho.

■■■ Por entender que las cláusulas de arbitraje de los convenios ya hechos no fueron redactados y aprobados por las partes teniendo en mente la regla que aquí enunciamos, el efecto de esta decisión será prospectivo solamente. Por esta razón *se revocará la resolución dictada en este caso en 31 de octubre de 1961 por el Tribunal Superior, Sala de Caguas, y se devolverá el caso a dicho Tribunal para ulteriores procedimientos.*

El juez ponente no está de acuerdo con que la opinión tenga efecto prospectivo solamente pues ve en ello una inconsistencia . Cree que el Tribunal Superior resolvió bien (como en efecto sostiene esta opinión) y que por lo tanto la resolución del Tribunal Superior en este caso debería ser confirmada. Sin embargo, la anterior es la opinión del Tribunal.