SAN JUAN MERCANTILE CORPORATION, peticionaria, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, demandada.

*Número:* O-75-78      *Resuelto:* 19 de septiembre de 1975

*Emilio Rodríguez Colón,* abogado de la peticionaria; *Federico Díaz Ortiz, Richard V. Pereira* y *Edwin Ortiz Pietri,* abogados de la demandada.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Los funcionarios y las oficinas públicas tienen que cumplir la ley como cualquier hijo de vecino. Tan sencilla es la proposición aquí concernida, como tan importante.

Un empleado de la peticionaria se querelló ante la Junta de Relaciones del Trabajo imputándole a la peticionaria una violación del convenio colectivo consistente, según el quere-

llante, en que aquella le estaba exigiendo a determinados dependientes "contar dos ganchos en vez de uno." (¹)

La Junta expidió la querella. En la misma expresa, en lo pertinente, que la querellada es una agencia de compañías navieras que prestan servicios en los puertos de San Juan y Ponce, Puerto Rico; que el querellante es un empleado; que al tiempo de los hechos que dieron motivo a la querella regía sobre patrono y empleado un determinado convenio colectivo que allí se menciona; y que la conducta del patrono constituyó una violación del convenio.

■ Tanto por escrito, como oralmente en la audiencia, la peticionaria interpuso varias defensas, una de las cuales consistió en que el empleado querellante no agotó los recursos de quejas y agravios y de arbitraje que para dilucidar estas cuestiones proveía expresamente el convenio colectivo. La Junta, en su decisión y orden, firmada por dos miembros de la misma, pues el tercer miembro no participó, expresó lo siguiente:

"Creemos innecesario detenernos a discutir tales defensas, puesto que consideramos que la Oficial Examinador resolvió correctamente que las mismas carecen totalmente de fundamento."

No estamos de acuerdo. El convenio colectivo vinculante a la fecha de los hechos disponía, en lo pertinente, como sigue:

"ARTICULO XI

CONDICIONES DE TRABAJO

. . . . . . . .

13(A) QUEJAS Y AGRAVIOS—Cualquier incidente, disputa, reclamación o controversia que surja entre las partes bajo los términos de este convenio y que no pueda ser resuelta dentro

(¹) Parece que se trata del cotejo de los bultos que se desembarcan. Ni en el cargo, ni en la decisión y orden de la Junta se define o describe esa operación.

del período de 48 horas (sábados y domingos excluídos) de haber surgido, mediante negociaciones directas entre un Representante de la COMPAÑIA y otro de la UNION, será puesto por escrito y sometido por la parte interesada a la otra o a más tardar el décimo día en que surgió dicho incidente, disputa, reclamación o controversia. La parte que someta la querella por escrito expondrá claramente la naturaleza de la misma y designará a su Representante con quien la otra parte deberá discutir la querella. La parte que reciba la querella escrita deberá inmediatamente nombrar a su Representante quién deberá reunirse con el Representante de la otra parte y discutir la querella en un esfuerzo por decidir la misma. Si no se llega a un acuerdo satisfactorio dentro del término de cinco (5) días después de la primera reunión, en tal caso la querella podrá ser sometida por escrito al procedimiento de Arbitraje.

"13 (B) ARBITRAJE—Toda disputa que no pueda ser resuelta mediante el procedimiento de quejas y agravios, y cualquier disputa con respecto a la interpretación o alegada violación de cualquier disposición de este Convenio, deberá ser sometida por escrito al procedimiento de Arbitraje. El Comité de Arbitraje estará constituído por dos (2) representantes de la COMPAÑIA y dos (2) representantes de la UNION y por un quinto miembro nombrado por el Secretario del Trabajo o la persona que él designe. El nombramiento de los representantes de las partes se hará dentro del período de 72 horas (excluyendo sábados y domingos) a partir del recibo del requerimiento escrito para arbitrar. La decisión podrá emitirse por el Comité de Arbitraje o por el Quinto Miembro, según lo acuerden las partes en cada caso. Dicha decisión será final y obligatoria para todas las partes y personas relacionadas con el caso."

En síntesis, la posición de la Junta es que el Comité de Arbitraje hubiese estado compuesto por dos representantes del patrono, por dos representantes de la Unión y por un quinto miembro nombrado por el Secretario de Trabajo de Puerto Rico, y que le dio crédito a la declaración del querellante de que los representantes de la Unión no hubiesen sostenido su posición en el Comité de Arbitraje.

Desde luego, esa posición es insostenible. Según en la jurisdicción general de los tribunales de justicia los ciuda-

danos no pueden tomarse la justicia por su mano con el pretexto de que creen que los tribunales no apoyarán sus pretensiones, lo mismo impera en el campo de las relaciones obrero-patronales. Nuestra ley decretó la negociación colectiva con la esperanza de que fuese un procedimiento conducente a la paz industrial. Art. 1 de la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, 29 L.P.R.A. sec. 62. Los procedimientos de quejas y agravios y los comités constituidos para atender esos problemas tienen el propósito de que los mismos se resuelvan en forma ordenada y en sustitución de la conducta desordenada y del desastre de las huelgas. La ley reviste de interés público estos procedimientos y su propósito de eliminar en lo posible las disputas obreras. Art. 1 de la Ley Núm. 130 antes citada.

Ya en *Rivera Adorno* v. *Autoridad de Tierras*, 83 D.P.R. 258 (1961), aclaramos que el convenio colectivo obliga al patrono, a la Unión y a los miembros individuales de la Unión. Bajo la vigencia de un convenio, según un patrono no puede hacer caso omiso de la unidad contratante y negociar individualmente con cada empleado por separado, tampoco puede el empleado desentenderse del convenio y actuar como si el mismo no existiese. Igualmente ocurre en lo referente a la dilucidación de los asuntos que deben ir a los comités de quejas y agravios establecidos por el convenio. Como dijimos en *Rivera Adorno*, supra, ni el patrono ni los obreros pueden pretender beneficiarse de ciertas cláusulas del convenio colectivo y rechazar otras. El convenio es un contrato y vincula a ambas partes por igual. En el mismo sentido véase, *Pérez* v. *Autoridad Fuentes Fluviales*, 87 D.P.R. 118 (1963), a la pág. 124.

Para abundar más, ante planteamientos similares a los hechos en el caso de autos y allí rechazados, en *Nazario* v. *Tribunal Superior*, 98 D.P.R. 846 (1970), dijimos a la pág. 854:

"Cabe añadir que las relaciones obrero-patronales del país no pueden estar sujetas a una regla tan injusta y desigual como la que el Secretario pretende que adoptemos. Esta sería en el sentido de que mientras una parte contratante queda obligada por el convenio colectivo a someterse a arbitraje, la otra parte puede, mediante la intervención de los abogados del Departamento del Trabajo, evadir su obligación contractual de ir a arbitraje. La idea en sí es contraria a las más básicas nociones de justicia. Al hacer jurisprudencia sobre una materia que se ha ido desarrollando en tan gran medida mediante el derecho jurisprudencial nuestra jurisprudencia tiene que estar informada por un pensamiento consistente y sistemático."

■ Para que nuestro ordenamiento de derecho laboral esté informado por ese pensamiento consistente y sistemático al cual todo ordenamiento jurídico aspira, es necesario concluir que cuando existe un convenio colectivo y dicho convenio contiene cláusulas para el procesamiento de quejas y agravios y para su decisión o arbitraje, éstas deben ser observadas por todos los que intervienen en el campo de las relaciones obrero-patronales: los obreros, los patronos, las uniones, la Junta de Relaciones del Trabajo y los tribunales.

*Se revocarán la decisión y orden recurridas.*