EDWIN HERNANDEZ CRUZ, POR SI Y COMO PARTE DE LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA CON SU ESPOSA CARMEN MENDEZ RAMOS
Demandantes-Apelantes

v.

PUEBLO INTERNATIONAL, INC., H/N/C PUEBLO SUPERMARKET; CALIXTO PEREZ Y LA SOC. COMPUESTA CON SU ESPOSA LUCY COTTO
Demandados-Apelados

Núm. KLAN-95-00794

San Juan, Puerto Rico, a 21 de marzo de 1996

Panel integrado por su presidente, Juez Rossy García
y los Jueces Aponte Jiménez y Negroni Cintrón

Rossy García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurso instado en el caso de epígrafe interesa la revocación de una sentencia dictada el 15 de junio de 1995 por el Tribunal de Primera Instancia, Sub-sección de Distrito. Mediante ésta, dicho foro dispuso la desestimación de una demanda que fue instada por los apelantes, acción civil que estaba predicada en los mismos hechos que dieron base al despido del co-apelante Hernández Cruz, controversia que fue objeto de dilucidación ante un Comité de Quejas y Agravios activado conforme a las disposiciones del Convenio Colectivo vigente a la fecha de su despido. ■ Al así dictaminar expresó en lo pertinente el tribunal de instancia como sigue: ■

*"En este caso a tenor con lo dispuesto en el Convenio Colectivo se celebró una vista el 12 de abril de 1994 ante el Comité de Quejas y Agravios. El patrono acusaba al empleado de haberse confabulado con otra persona para hurtar rabos de langosta y camarones y el empleado alegaba que esas imputaciones eran falsas y que por lo tanto no había causa justificada para el despido. En dicha vista no se presentó prueba ni por el empleado ni por el patrono, ni en favor ni en contra de las respectivas alegaciones de las partes.*

*El Comité de Quejas y Agravios resolvió el caso a base de un acuerdo entre el patrono y la Unión que representaba al empleado. Se dejó sin efecto el despido y se sustituyó por una suspensión de empleo y sueldo desde el día 6 hasta el día 24 de abril de 1994. Además, el empleado "aceptó que de violar cualquier política de la compañía quedaría cesante de empleo y sueldo".*

*La aprobación del Comité de Quejas y Agravios al acuerdo sometido por las partes tiene tanto o más valor que una determinación hecha a base de prueba presentada.*

*Volver a litigar la controversia resuelta por el Comité de Quejas y Agravios es contrario a las normas establecidas por las leyes y por nuestro más Alto Tribunal. No deben prolongarse los pleitos innecesariamente y debe verse con buenos ojos los acuerdos entre las partes. Entendemos que al demandante le es aplicable la doctrina de cosa juzgada y que por lo tanto no puede pretender que se ventile y se adjudique de nuevo la controversia entre las partes."*

Inconformes con dicho dictamen y luego de serles denegada una moción de reconsideración, los apelantes interpusieron el recurso de apelación que nos ocupa. En el mismo imputan, en síntesis que el tribunal de instancia incidió al desestimar la demanda aplicando la doctrina de cosa juzgada y resolver que *"entre las partes demandante y demandada se adjudicaron por aceptación o transacción completamente todas las causas de acción en controversia".* ■

Encontrándonos en condición de dictaminar resolvemos que no se cometieron los errores imputados y que resulta procedente confirmar la sentencia apelada.

## I

Los hechos propios y pertinentes a los aspectos de derecho a los que se contrae el recurso instado no están en disputa. Según surge de los autos el 6 de abril de 1994 el apelante Edwin Hernández Cruz se encontraba realizando labores propias de su empleo como cajero en el Supermercado Pueblo de la

Avenida de Diego en Santurce. Ese día se suscitó un incidente en torno al cobro de ciertos productos lo que motivó que el gerente de la tienda en su capacidad oficial le imputara al apelante Hernández Cruz en su lugar de empleo *"que estaba confabulado con una persona desconocida y que fungía como cliente para no cobrar rabos de langostas y camarones durante el turno del apelante] como cajero"* ■ El valor de la deficiencia imputada en la transacción fue de $87. En dicha ocasión y por entender el gerente que se trataba de una situación en la que había envuelta una cuestión de deshonestidad procedió a despedirlo sumariamente ese mismo día. ■ Para la fecha del incidente que dio base al despido del apelante éste era miembro de la Unión de Empleados de Pueblo, encontrándose vigente un convenio colectivo suscrito entre la Unión y Pueblo.

Con ese trasfondo e invocando el mecanismo de arbitraje convenido para la solución de disputas el apelante impugnó su despido ante el Comité de Quejas y Agravios. ■ En el curso del trámite pactado para la solución de dicha disputa convinieron las partes ante el Comité ello luego de la celebración de dos vistas ■ en ajustar la sanción disciplinaria impuesta a una suspensión de empleo y sueldo por el período comprendido entre el día de los hechos y hasta el 24 de abril de 1994 fecha en que se haría efectiva la reinstalación. Además y como parte del acuerdo el apelante Hernández Cruz aceptó que de violar en el futuro cualquier política de la compañía ello constituiría base para ser cesanteado de empleo y sueldo. ■

Considerado como fue el acuerdo antes indicado por el Comité el mismo le mereció su aprobación así y conforme a lo pactado emitió resolución ordenando el archivo definitivo de la querella. Se benefició así el apelante de dicho acuerdo al lograr su reinstalación en el empleo bajo los términos indicados.

Habiendo convenido las partes en poner fin a dicha disputa laboral mediante el acuerdo indicado el 23 de junio de 1994 los apelantes presentaron la demanda en daños y perjuicios que dio base a la sentencia que es objeto del recurso que nos ocupa. En la misma fueron incluidos como demandados Pueblo International Inc. así como el gerente Sr. Calixto Perez su esposa y la sociedad legal de gananciales entre ellos constituida.

Emplazados como fueron dichos demandados presentaron su contestación a la demanda negando las alegaciones básicas En la afirmativa invocaron entre otras defensas que la causa de objeto de un acuerdo transaccional ante el Comité de Quejas y Agravios ello para alegar que el apelante se encuentra ahora impedido de relitigar los hechos y circunstancias que dieron base a su despido luego de convenir y aceptar los términos del referido acuerdo del cual se benefició. ■ Posteriormente presentaron moción de desestimación predicada en la alegada falta de jurisdicción del tribunal para entender en dicha controversia. Así argumentaron *"que la corrección o justificación del despido y/o suspensión del querellante es de la exclusiva jurisdicción del procedimiento de quejas, agravios y arbitraje contemplado en el convenio colectivo vigente al momento del despido"*. ■ Sometida como quedo dicha moción luego de presentar los apelantes escritos en oposición el tribunal de instancia en reconsideración emitió la sentencia desestimatoria que es objeto del recurso que nos ocupa. ■

## II

Por la naturaleza de la controversia a que se contrae el recurso instado en el caso de epígrafe, debemos iniciar por señalar que en nuestra jurisdicción existe una vigorosa política publica dirigida a favorecer y promover la resolución de las querellas y controversias que puedan suscitarse dentro del marco de la relación obrero-patronal conforme al procedimiento de querellas y arbitraje pactado en el convenio colectivo. *Pérez v. Autoridad Fuentes Fluviales,* 87 D.P.R. 118, 124 (1963). Como bien se ha expresado, el convenio colectivo es un mecanismo que promueve la paz y la estabilidad en el campo obrero patronal y, por tanto, *"su validez y eficiencia debe ser siempre objeto del más entusiasta endoso por parte de los tribunales".* *U.I.L. de Ponce v. Dest. Serrallés, Inc.* 116 D.P.R. 348, 352 (1985). Así, el convenio y su cláusula de querellas y arbitraje obligan por igual a ambas partes, favoreciendo la jurisprudencia que se le de el mayor libre juego posible a los procedimientos de querellas y arbitraje acordado por las partes, sin más limitaciones que los que las leyes y las propias partes impongan. *Pérez v. Autoridad Fuentes Fluviales, supra,* a la pág. 127. Como bien expresó el Tribunal Supremo de los *Estados Unidos en United Steelworkers of American v. Warrior & Gulf Navegation Co.,* 363 U.S. 574, 581 (1960), *"excepto los asuntos que las partes específicamente excluyen del procedimiento de querellas y arbitraje pactado en el convenio colectivo, todas las*

*controversias entre ellas caen dentro de dicho procedimiento. En otras palabras, éste es parte y continuación de la negociación colectiva".* (Traducción nuestra)

Podemos aquí afirmar, como bien ha expresado el Tribunal Supremo, que un laudo de arbitraje en general goza de una naturaleza similar a la de una sentencia o decreto judicial, *Colón Molinary v. A.A.A.*, 103 D.P.R. 143 (1974), y que la función del árbitro *"es análoga a la ejercida por una sala sentenciadora de primera instancia, estando el foro apelativo facultado para revisar los planteamientos al respecto". Sonic Knitting Industries v. I.L.G.W.U.* 106 D.P.R. 557, 580-581, (1977).

Dirigiendo nuestra atención a la situación particular del caso que nos ocupa, encontramos que para la fecha del despido del apelante éste era miembro de la Unión de Empleados de Pueblo, encontrándose vigente un convenio colectivo entre la Unión y Pueblo. Surge, además, que por virtud del art. XXV, inciso (c), del Convenio, que trata sobre discrimen o despido de empleados se acordó que *"[l]a compañía tendrá derecho a despedir por justa causa a cualquier empleado sujeto al procedimiento de Quejas y Agravios".*

Por otro lado, y en lo que respecta al procedimiento pactado para la solución de disputas, el trámite quedó consignado en el art. XXIX del Convenio, contemplándose la posibilidad de resolver el incidente o motivo de la queja mediante un acuerdo en cualquiera de las etapas del procedimiento. Acordaron así las partes como sigue:

*"Artículo XXIX Quejas, Agravios y Arbitraje*

*A. Si surgiere cualquier controversia o diferencia de interpretación entre la Unión y la Compañía que envuelva el significado de este Convenio, o cualquier conflicto entre la Unión y la Compañía sobre la suspensión o despido, incluyendo aquellos en donde se alegue discrimen u hostigamiento, de uno o más empleados, las jornadas de trabajo, trabajo los domingos, jornales o período para tomar alimentos, dicho asunto será resuelto conforme al siguiente procedimiento:*

*PRIMERA ETAPA*

*1) Si algún empleado tiene una queja, deberá, no más tarde de diez (10) días calendario después de haber surgido el incidente o motivo de la queja, por sí o a través del delegado de la Unión en la tienda, discutir el asunto con el Gerente de la tienda. El Gerente deberá dar su contestación al asunto dentro del término especificado de diez (10) días calendario, la misma prescribirá y no podrá ser ventilada.*

*2) Si la contestación del Gerente no es satisfactoria al empleado, éste deberá radicar por escrito una querella ante la Unión. Dicho escrito deberá radicarse no más tarde de (10) días calendario a partir de la fecha en que el empleado reciba contestación.*

*SEGUNDA ETAPA*

*1) Radicada la querella escrita del empleado, un representante de la Unión se comunicará con un representante de la Compañía para fijar de mutuo acuerdo la fecha y lugar para celebrar una vista de quejas y agravios.*

*2) La vista se celebrará ante uno o más representantes de la Unión y uno o más representantes de la Compañía, con la comparecencia del querellante, el querellado y de los testigos pertinentes al caso.*

*3) Se levantará un acta breve sobre lo tratado y lo acordado en la vista, bajo la firma de los representantes de ambas partes.*

*TERCERA ETAPA*

*1) La Unión podrá solicitar reconsideración de lo acordado en la vista de quejas y agravios y a esos efectos el Presidente de la Unión o su representante autorizado se comunicara con el Director*

*de Recursos Humanos o su representante autorizado y fijará una fecha de mutuo acuerdo para examinar el asunto. Celebrada la reunión, el Director de Recursos Humanos o su representante emitirá por escrito la decisión que corresponda, no más tarde de diez (10) días calendario después de finalizar la reunión.*

*2) Si no llegara a un acuerdo sobre el caso, cualquiera de las partes podrá recurrir a arbitraje, en cuyo caso las partes inmediatamente seleccionarán un árbitro independiente;de no llegar a un acuerdo con el árbitro, las partes solicitarán una quinta de árbitros del Negociado de Conciliación y Arbitraje del Departamento del Trabajo de Puerto Rico. Las partes alternativamente eliminarán nombres de la quinta y le someterán el caso al árbitro que resulte seleccionado mediante este proceso.*

### CUARTA ETAPA

*1) El árbitro deberá señalar la fecha, hora y sitio en que habrá de celebrarse la vista del caso, y deberá notificarlo a las partes de mutuo acuerdo, [sic] renunciaren por escrito a dicha notificación o modifiquen el término de la misma.*

*2) Cualquiera de las partes tendrá el derecho de solicitar que se tome un récord taquigráfico mutuamente aceptado. El mismo correrá por cuenta de la parte que lo solicite, obligándose a la parte solicitante a proveer una copia a la otra parte. El récord taquigráfico constituirá el récord oficial del caso.*

*3) En el caso de que alguna de las partes dejare de comparecer a la vista citada por el árbitro sin haber sido previamente excusado por éste, el árbitro podrá emitir su laudo basado en la prueba que presente la parte que comparezca.*

*4) Todo laudo que emita el árbitro será conforme a derecho.*

*(a) El árbitro no tendrá poder o facultad para en forma alguna, alterar, enmendar, cambiar, modificar, añadir o restar a ninguna de las disposiciones de este Convenio. Un laudo emitido en violación de este inciso será nulo y sin efecto. En casos de despidos discriminatorios, el árbitro podrá conceder todos los remedios autorizados por ley. En casos disciplinarios el árbitro tendrá la facultad de determinar si existe o no causa para acción disciplinaria, y la razonabilidad de la sanción disciplinaria.*

*(b) Para tener efecto, las notificaciones que se hagan de acuerdo a este Artículo, serán entregadas personalmente por una parte a la otra, o enviadas por correo certificado con acuse de recibo a la dirección postal de la otra parte.*

*(c) Transcurrido un (1) mes de la fecha en que un empleado incurriere en una falta sin que la misma le hubiese sido notificada por escrito por la Compañía, dicha falta habrá de influir sobre el récord de dicho empleado."*

Resulta evidente que, al suscribir el convenio, las partes se obligaron a utilizar el procedimiento por ellos pactado para ventilar y resolver cualquier controversia entre la Unión y la Compañía relacionada con la suspensión o despido de un empleado Uniónado o con el significado y alcance del Convenio. ▮▮▮ A dicho procedimiento se acogió el apelante para impugnar la procedencia y justificación de su despido y, en particular, la base o fundamento para dicha acción disciplinaria. Se benefició así del mismo al negociar un acuerdo que representó su reinstalación en el empleo, ello luego de acordar las partes en ajustar la sanción disciplinaria impuesta por la falta imputada por una suspensión de empleo y sueldo por el período acordado. Tal acuerdo transaccional, que dio base al cierre y archivo definitivo de la querella, dispuso con finalidad de toda controversia relacionada con el despido del apelante y constituye impedimento para la relitigación de la causa o fundamentos que motivaron la sanción disciplinaria impuesta, en particular, la cuestión de deshonestidad en la que se fundó el despido originalmente decretado.

Recapitulando, el convenio suscrito entre la Unión y Pueblo es claro y sus términos amplios.

Ordena someter al procedimiento de quejas, agravios y arbitraje todas las querellas o reclamaciones que puedan surgir entre ellos, incluyendo las relativas al despido o suspensión de un empleado. Dicho convenio es la ley entre las partes y obliga a ambas por igual en su cumplimiento. así fue reconocido por las partes al invocarlo y acogerse a él, para convenir luego, en el proceso, en la estipulación que resolvió la disputa relacionada con el despido. Este acuerdo, luego de ser aprobado por el Comité de Quejas y Agravios, fue acatado y cumplido por Pueblo al modificar la sanción disciplinaria impuesta para reinstalar al apelante. Habiéndose beneficiado el apelante del mismo, está ahora impedido de relitigar mediante acción independiente la actuación de los apelados al despedirlo por el proceder imputado. Basta con señalar que el arbitraje es generalmente la última etapa o eslabón final del procedimiento al cual someten las querellas que se pretenden dilucidar por virtud del contrato de convenio colectivo suscrito entre las partes, lo que no excluye la posibilidad de acuerdo entre las partes durante dicho proceso como parte del proceso negociado para la solución de disputas. Es por ello que se ha sostenido que una vez se dispone de un asunto resuelto en una etapa prearbitral, no se podrá considerar una querella subsiguiente cuando los hechos en los que se funda la misma resultan ser iguales a los considerados previamente en la adjudicación de la querella anterior. Ray J. Schoonhovern, Practice and Procedure in Labor Arbitration, 3ra. ed. 1993, pág. 103.

Por último y contrario a lo que postulan los apelantes, éstos no han demostrado que existan circunstancias que justifiquen ignorar el alcance y finalidad del procedimiento estipulado para la solución de disputas y permitan relitigar la razón y justificación del despido por la vía judicial mediante acción independiente. ▪ Tampoco encontramos alegación alguna en la demanda constitutiva de causa de acción independiente a aquella relacionada con el despido decretado y que fue ya dilucidada mediante el mecanismo pactado en el Convenio.

Finalmente, atendiendo ahora la argumentación de la co-apelante Carmen Méndez Ramos, a los efectos de que la acción por ella instada es totalmente independiente de la de su esposo, la frivolidad de tal aseveración es evidente. Si bien es cierto que la acción a favor de la esposa de un agraviado por alegada difamación ha sido reconocida por el Tribunal Supremo, *Carlos O. Rodríguez v. El Vocero, Inc.*, ___ D.P.R. ___ (1994), **94 J.T.S. 13**, a la pág. 11505, la misma es una contingente a la que pueda tener el difamado, habiéndose resuelto expresamente que *"no existirá derecho a un remedio en aquellas situaciones en las cuales el propio sujeto objeto de las informaciones injuriosas no tenga derecho él a un remedio en daños --por difamación o daños y angustias mentales--..." Id,* a la pág. 11506.

Procedemos en consecuencia a emitir sentencia confirmatoria de la apelada, mediante la cual el tribunal de instancia decretó la desestimación de la acción instada por los apelantes.

### III
Por los fundamentos antes consignados, se confirma la sentencia apelada mediante el recurso instado en el caso de epígrafe.

Lo acuerda el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General

### ESCOLIOS 96 DTA 53

**1.** En la demanda instada los apelantes reclaman indemnización por los salarios y beneficios marginales dejados de devengar como consecuencia de su despido, más una suma de $500,000.00 como indemnización por los daños resultantes *"al verse despedido de su empleo por imputaciones de apropiación ilegal o hurto en la misma tienda en que trabajaba... sin recibir ninguna rectificación expresa de su patrono,...".* (véase Alegación 8 de la demanda, Apéndice Conjunto, pág. 3.

**2.** Véase Sentencia, Apéndice Conjunto, págs. 11 y 12.

**3.** Véase Escrito de Apelación, pág. 4

**4.** Véase Escrito de Apelación; pág. 2.

**5.** La decisión de despedir al Sr. Hernández-Cruz la tomó el Sr. Calixto Pérez Gerente en dicho establecimiento.

**6.** En lo pertinente el convenio provee en su Artículo XXV inciso (C) que "[la] Compañía tendrá derecho a despedir por justa causa a cualquier empleado sujeto al procedimiento de Quejas y Agravios. Por su parte el Artículo XXIX establece el mecanismo para la solución de controversia o cualquier conflicto entre la unión y la Compañía (véase Convenio Colectivo, Apéndice Conjunto, págs. 43 y 45-46 respectivamente.)

**7.** Dichas vistas fueron celebradas los días 12 y 22 de abril de 1994.

**8.** Véanse la resolución en la que se recoge el acuerdo Apéndice Conjunto págs 48-49 así como el documento denominado *"Personnel Action"*, Apéndice Conjunto pág 50.

**9.** Véase contestación a la demanda, Apéndice Conjunto págs. 9 y 10.

**10.** Véase Moción de Desestimación Apéndice Conjunto págs. 14-25.

**11.** Véase Sentencia en Reconsideración Apéndice Conjunto págs. 11-12.

**12.** En lo atinente a la facultad del árbitro para conceder remedios dentro de un procedimiento de arbitraje, la tendencia es conceder mayor latitud a los árbitros en la confección de remedios en sus laudos, y a ese respecto éstos han enfatizado su autoridad para conceder el remedio de daños y perjuicios aun cuando el acuerdo o convenio nada dijeran de este remedio. Frank and Edna Asper Elkouri, *How Arbitration Works,* págs. 236-237, 1960, citado con aprobación en *Sonic Knitting Industries v. I.L.G.W.U., supra,* a la pág. 562.

A ese respecto, el Tribunal Supremo de Puerto Rico ha adoptado las manifestaciones vertidas en decisiones arbitrales que apuntan a que, en ausencia de lenguaje claramente restrictivo, se debe conceder gran latitud en la confección de un remedio apropiado que constituya la decisión del árbitro, por lo cual resulta razonable que éste pueda conceder una indemnización si llega a la conclusión de que el patrono ha actuado en forma irrazonable. *Id.*, a las págs. 561-563. (Citas omitidas).

**13.** Entre las excepciones a la regla de cumplimiento previo de la obligación de arbitrar, el Tribunal Supremo ha identificado dos, a saber: cuando la Unión falta a su deber de proveer a sus miembros una justa representación y cuando acudir al arbitraje constituya un gesto futil. *Pagán v. Fundación, supra,* a la pág. 231.