# 99 DTA 123

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I - SAN JUAN
PANEL III**

HERMANDAD UNION DE EMPLEADOS DE LA CORPORACION DEL
FONDO DEL SEGURO DEL ESTADO
Querellado-Recurrido

v.

IVELISSE M. SERRANO RODRIGUEZ
Querellante-Recurrente

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CORPORACION DEL FONDO DEL SEGURO DEL ESTADO
Querellado-Recurrido

v.

IVELISSE M. SERRANO RODRIGUEZ
Querellante-Recurrente

Núm. KLRA-99-00030

San Juan, Puerto Rico, a 18 de marzo de 1999

Panel integrado por su Presidente, Juez Arbona Lago
y los Jueces Brau Ramírez y Urgell Cuebas

Se trata de un trámite de revisión administrativa incoado contra dos resoluciones de la Junta de Relaciones del Trabajo, en lo sucesivo J.R.T., emitidas el 17 y 18 de diciembre de 1998 y archivadas en autos en esta última fecha. De tal forma la J.R.T. confirmó el *"Aviso de Desestimación de Cargo"* emitido el 30 de noviembre de 1998 por el Presidente de la J.R.T., lo que también equivale a rehusar expedir querella, en los casos CA-98-106 (contra la Hermandad Unión de Empleados de la Corporación del Fondo del Seguro del Estado) y CA-98-108 (contra la Corporación del Fondo del Seguro del Estado).

### Antecedentes

La recurrente, Sra. Ivelisse M. Serrano, comenzó a trabajar para la Corporación del Fondo del Seguro del Estado, en lo sucesivo F.S.E., en el 1990. Es miembro de la Hermandad Unión de Empleados de la Corporación del Fondo del Seguro del Estado, en lo sucesivo HUECFSE, y a la fecha de los hechos se desempeñaba como Secretaria IV.

En enero de 1999 el F.S.E. convocó para asignar las plazas números 1348 y 3717, definidas como *"técnico de personal"*, lo que implicó una posibilidad de ascenso para la Sra. Serrano por lo que solicitó competir. La convocatoria cerró el 27 de enero de 1998 con sólo tres elegibles; a saber: Sr. Wilfredo Garay Garay, Luis A. Rodríguez Romero y la recurrente, Sra. Ivelisse M. Serrano.

Conforme al sistema de puntuación establecido en el F.S.E. y avalado por el contrato colectivo de trabajo el Sr. Garay obtuvo la mayor puntuación para los puestos números 1348 y 3717, con 68.50 y 66.50; el Sr. Rodríguez quedó segundo con 57.00 y 55.75 y la Sra. Serrano tercera con 42.25 y 43.50. El Sr. Garay es el de mayor antigüedad por haber comenzado a laborar en el F.S.E. el 12 de junio de 1978, le sigue la Sra. Serrano el 9 de enero de 1990 y el 16 de noviembre de 1990 el Sr. Rodríguez.

Este litigio se circunscribe al puesto núm. 1348, que fue declinado por el Sr. Garay y el F.S.E., con anuencia de HUECFSE (carta acuerdo), lo concedió al Sr. Rodríguez por su mayor puntuación.

Por entender la recurrente que el puesto 1348 le correspondía, por ser la empleada de mayor antigüedad que lo solicitaba luego de que el Sr. Garay lo declinó, presentó dos querellas ante la J.R.T., contra su patrono y contra la Unión. Entiende que ambos se confabularon en detrimento de ella, para violar los términos del contrato colectivo de trabajo, en específico el Art. 8, sec. 2 (a) de la Ley de Relaciones del Trabajo de Puerto Rico, señalando que:

*"En o desde el 26 de enero de 1998, la Unión de epígrafe incurrió en prácticas ilícitas del trabajo al negociar con el Patrono una plaza de Técnico de Personal, Puesto 1348 con un empleado de menos antigüedad, violando así el Artículo 9 del Convenio Colectivo vigente.*

*Esta acción surge cuando se emite una Convocatoria Núm. 81-98, Ascenso, posteada del 8 de enero de 1998 hasta el 27 de enero de 1998. Sin embargo, mediante notificación verbal me enteré que las partes nombraron mediante Estipulación a otro empleado de menor antigüedad."*

La J.R.T. entendió y resolvió que las relaciones obrero-patronales en el F.S.E. se encuentran reguladas por un convenio colectivo con vigencia desde el 1ro de julio de 1996 hasta el 30 de junio de 1999 (Art. 49, pág. 120). También señaló que: (1) en tal convenio, el Art. 6 establece un proceso para Atender y Resolver Querellas en forma diligente, ordenada y justa y que también (2) el Art. 5, sección 41 respecto a la antigüedad, dispone:

*"Las partes reconocen que.la antigüedad no está reñida con el principio de mérito y que, por tanto, es un factor que conjuntamente con la preparación académica, la experiencia, la puntualidad, asistencia y la conducta del empleado debe reconocerse y utilizarse en lo relativo a ascensos, cesantías y otros movimientos de personal."*

Finalmente la J.R.T. concluyó que *"... la Junta no entiende en casos de violación de convenio colectivo cuando las partes no han agotado los remedios que el mismo ofrece para la solución de tales problemas. Adoptando de esta forma la doctrina de agotamiento de remedios contractuales, J.R.T. v. A.C.A.A., 107 D.P.R. 84 (1978)".*

El 19 de enero de 1999 recurrió, vía revisión, la Sra. Serrano e imputa a la J.R.T. haber incurrido en error, a saber:

*"A. Erró la JRT al desestimar el Cargo porque alegadamente la querellante no había agotado el procedimiento de Quejas y Agravios conforme al Convenio Colectivo.*

*B. Erró la JRT al desestimar el Cargo porque alegadamente el FSE tenía capacidad, conforme al Convenio Colectivo para tomar elementos distintos a la antigüedad de la querellante para asignar la plaza impugnada."*

El 10 de febrero de 1999 la J.R.T. presentó *"Memorando en Oposición a que se Expida Recurso de Revisión".*

### Exposición y Análisis.

Es política pública en esta jurisdicción promover la paz industrial vía convenios colectivos de trabajo. Véase Art. (1) de la Ley 130 del 8 de mayo e 1945, según enmendada. La J.R.T. tiene la encomienda de investigar querellas que imputen prácticas ilícitas de trabajo, con propósito de evitar que la política pública sea violentada. El Art. II del Reglamento Núm. 2 de la J.R.T. dispone respecto al proceso que implica recibir el cargo imputado:

*"Al radicarse un cargo, la Junta hará que se practique una investigación preliminar de las alegaciones contenidas en el mismo. El Presidente de la Junta decidirá si se debe o no expedir una querella y un aviso de audiencia."*

Presentado el cargo, como lo fue en este caso bajo los numeros CA-98-106 (contra la Unión) y CA-98-108 (contra el patrono), la J.R.T. procedió a su investigación y concluyó que no ha de entender en el asunto, conforme a su política de no intervención cuando se imputa la violación de parte de un convenio colectivo de trabajo sin antes recurrir en primera instancia, al proceso que para la solución de tales disputas establecen los convenios colectivos vigentes. Es reiterada la doctrina de que la J.R.T. ha de requerir el agotamiento de los remedios que el convenio colectivo dispone, antes de asumir jurisdicción. A tal respecto dispuso, correctamente, que:

*"Con el fin de atender y resolver en forma diligente, ordenada y justa todas las controversias, quejas y querellas que puedan surgir entre las partes, se establece el Procedimiento para Atender y Resolver Querellas, Artículo 6 del Convenio Colectivo pactado entre la Hermandad y la Corporación. Es importante señalar que la querellante no cuestionó, ni radicó querella alguna en cuanto al nombramiento del Sr. Luis Rodríguez Romero, al puesto de Técnico de Personal, de acuerdo a los procedimientos antes mencionados. Nuestro Honorable Tribunal Supremo dictaminó en el caso de San Juan Mercantile Corp. v. J.R.T., 108 D.P.R. 86 (1975), lo siguiente:*

*Según en la jurisdicción general de los tribunales de justicia, los ciudadanos no pueden tomarse la justicia por su mano con el pretexto de que creen que los tribunales no apoyarán sus pretensiones, lo mismo imperaba en el campo de las relaciones obrero-patronales. Nuestra ley decretó la negociación colectiva con la esperanza de*

*que fuese un procedimiento conducente a la paz industrial. Artículo (1), de la Ley Número 130 del 8 de mayo de 1945, 20 L.P.R.A., Sección 62.*

*Ya en Rivera Adorno v. Autoridad de Tierras, 83 D.P.R. 258 (1961), aclaramos que el convenio colectivo obliga al patrono, a la Unión y a los miembros individuales de la Unión. Bajo la vigencia de un convenio, según un patrono no puede hacer caso omiso de la unidad contratante y negociar individualmente con cada empleado por separado, tampoco puede el empleado desentenderse del convenio y actuar como si el mismo no existiese.*

*Igualmente ocurre en lo referente a la dilucidación de los asuntos que deben ir a los Comités de Quejas y Agravios establecidos por el Convenio. Como dijimos en Rivera Adorno, supra, ni el patrono ni los obreros pueden pretender beneficiarse de ciertas cláusulas del convenio colectivo y rechazar otras. El convenio es un contrato y vincula a ambas partes por igual. En el mismo sentido véase, Pérez v. Autoridad de las Fuentes Fluviales, 87 D.P.R. 118 (1963), a la página 124."*

Concluyó nuestro Honorable Tribunal Supremo al declarar sin lugar la querella expedida contra *San Juan Mercantile,* lo siguiente:

*"Para que nuestro ordenamiento de derecho laboral esté informado por ese pensamiento consistente y sistemático, al cual todo ordenamiento jurídico aspira, es necesario concluir que cuando existe un convenio colectivo y dicho convenio contiene cláusulas para el procesamiento de quejas y agravios y para su decisión o arbitraje, éstas deben ser observadas por todos los que intervienen en el campo de las relaciones obrero-patronales, los obreros, los patronos, las uniones, la Junta de Relaciones del Trabajo y los tribunales."*

La Sra. Serrano no está en entera libertad de establecer trámites y procedimientos; ello llevaría al caos administrativo en el neurálgico e importante mundo obrero-patronal. Por el contrario, queda sujeta a las cláusulas del convenio colectivo que rige el régimen de trabajo. A tal efecto no le es lícito evadir la doctrina inoperante en esta jurisdicción, al efecto de que es menester recurrir y agotar los remedios que los contratos de trabajo ofrezcan al interesado antes de acudir y ocupar los limitados recursos de la J.R.T. Tal doctrina de agotamiento de recursos contractuales también requiere que la J.R.T. se abstenga de intervenir cuando no se observe, o cuando no estén presentes circunstancias excepcionales o especiales que recomienden otro curso de acción, lo que aquí no se justifica. Véase *San Juan Mercantile v. J.R.T.,* 104 D.P.R. 86 (1975). Más reciente aún, en *Martínez Rodríguez v. A.E.E.,* 133 D.P.R. ___ (1993) **93 J.T.S. 108,** 10917, se dijo:

*"Este Tribunal no ha titubeado en poner en vigor el requisito de agotamiento de remedios contractuales que presupone una intervención de La Junta. Ver, e.g., Hermandad Unión de Empleados v. Fondo del Seguro del Estado, 112 D.P.R. 51, 53-54 (1982); San Juan Mercantile v. Junta de Relaciones del Trabajo, 104 D.P.R. 86 (1975). Similarmente, hemos determinado que las partes deben agotar los remedios contractuales aun antes de acudir a los tribunales, salvo que exista justa causa. Pagán v. Fundación Hospital Dr. Pila, supra, 234; Pérez v. Autoridad de Fuentes Fluviales, 87 D.P.R. 118, 127. Ello responde a varias razones tanto del derecho de obligaciones y contratos como de orden público."*

*La J.R.T.* entendió, en el ejercicio de su discreción administrativa, que en el caso del epígrafe no concurría dato alguno de índole excepcional que ameritase acudir a la norma de excepción, para expedir querella e iniciar investigación encaminada a determinar si hubo alguna violación que constituya práctica ilícita del trabajo por parte del patrono y la unión. Debemos respetar tal ejercicio del 'expertise' administrativo, máxime cuando la recurrente no aporta hechos que militen en contrario a lo resuelto. No es cierto que la antigüedad en el empleo sea consideración única para asignar la plaza en disputa. El Art. 5, sec. 4 del convenio colectivo vigente dispone, en su parte pertinente, que... la antigüedad... es un factor que conjuntamente con la preparación académica, la

*experiencia, la puntualidad, asistencia y la conducta del empleado debe reconocerse y utilizarse en lo relativo a ascensos...".*

Por otro lado, y aún de más importancia para denegar la expedición del auto de revisión, consiste en que este tipo de determinación de la J.R.T. no es revisable por los tribunales por razón de que no se considera determinación final. Véase lo resuelto en *Martínez Rodríguez, v. A.E.E.,* 133 D.P.R. ___ (1993, **93 J.T..S. 108,** pág. 10,919; *Luce & Company v. J.R.T.,* 82 D.P.R. 96, 101-102 (1961).

No debemos extendernos más para resolver que no debemos expedir el auto de revisión solicitado. Los autos no cumplen con el criterio rector de la Regla 66 del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII(A).

**Dictamen**

Se deniega la solicitud para expedir auto de revisión.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General