Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| HIETEL<br><br>Demandante-Peticionarios<br><br>v.<br><br>TELEFÓNICA DE PUERTO RICO / CLARO<br><br>Demandado-Recurrido | KLCE202400963 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso núm.: SJ2023CV11651 (803)<br><br>Sobre: Impugnación o Confirmación de Laudo |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Sánchez Ramos, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

El Tribunal de Primera Instancia ("TPI") denegó una solicitud de revisión de una determinación del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos (el "Negociado") mediante la cual se desestimó con perjuicio una querella presentada por una empleada contra su patrono, ello a raíz de la incomparecencia de la Unión a la vista de arbitraje. Según se explica a continuación, hemos determinado, en el ejercicio de nuestra discreción, denegar la expedición del auto solicitado.

I.

El 18 de diciembre de 2023, la Hermandad Independiente de Empleados Telefónicos (la "Unión"), en representación de la empleada Jennieliz Toro Ríos, presentó ante el TPI una *Petición de Revisión de Resolución Arbitral* (la "Demanda") en contra de la Puerto Rico Telephone Company, Inc. (el "Patrono").

La Unión solicitó que se dejara sin efecto una Resolución del Negociado mediante la cual se desestimó con perjuicio una querella (caso A-23-251) presentada por dicha parte. La Unión señaló que la

determinación del Negociado obedeció a la incomparecencia de la Unión a la vista de arbitraje pautada para el 15 de noviembre de 2023. Arguyó que, al así actuar, el Negociado actuó en contra de la política pública de que los casos se vean en los méritos.

El Patrono se opuso a la Demanda; sostuvo que la decisión del Negociado fue realizada conforme lo establece el Reglamento para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje (el "Reglamento"), el cual se encuentra validado por el convenio colectivo acordado entre la Unión y el Patrono (el "Convenio").

Mediante una sentencia notificada el 17 de junio (la "Sentencia"), el TPI declaró sin lugar la Demanda. Determinó que la decisión de la árbitro del Negociado fue conforme a derecho, ya que cumplió con el Reglamento y la Unión no excusó su incomparecencia a la vista.

El 2 de julio, la Unión solicitó la reconsideración de la Sentencia, lo cual fue denegado por el TPI mediante una Resolución notificada el 8 de agosto.

El 6 de septiembre, la Unión presentó el recurso que nos ocupa. Resalta que el Negociado desestimó la querella a pesar de que la vista era solo la primera y no había proyecto de sumisión. Arguye que lo actuado por el Negociado constituye un abuso de discreción, pues únicamente hubo una tardanza en llegar a la vista y, en todo caso, se trataría de una sanción extrema por un primer incumplimiento de la Unión. El Patrono presentó su alegato en oposición. Disponemos.

II.

El recurso de *certiorari* es el vehículo procesal discrecional utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal de menor jerarquía. *IG Builders et al v. BBVAPR,* 185 DPR 307, 337-338 (2012); *Pueblo v.*

*Díaz de León*, 176 DPR 913, 917 (2009). Véase, además, Artículo 670 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 3491.

Con el fin de que podamos ejercer de forma sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que para ello debemos considerar. Éstos son:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Véase *IG Builders et al.,* 185 DPR a las págs. 338-339.

Un *certiorari* sólo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. En otras palabras, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

III.

La negociación colectiva reviste un gran interés público por ser un medio eficaz y directo para promover la estabilidad y paz industrial. *Ceferino Pérez v. Autoridad de Fuentes Fluviales*, 87 DPR 118, (1963). Mediante la negociación colectiva, se puede pactar, en el correspondiente convenio, que las reclamaciones que surjan del mismo se atiendan mediante un proceso de arbitraje. *Íd.*

En consideración a que el arbitraje es un procedimiento alterno de carácter contractual, los tribunales debemos abstenernos de considerar controversias que las partes acordaron someter a arbitraje. Dicho de otro modo, aunque la intervención judicial no está totalmente vedada, ante un acuerdo de arbitraje, lo prudente es la abstención judicial. *U.C.P.R. v. Triangle Engineering Corp.,* 136 DPR 133, 141-142 (1994). Esta doctrina de autolimitación judicial es cónsona con la clara política pública a favor del arbitraje como mecanismo apropiado para dilucidar, de forma final, las controversias obrero-patronales, por ser más ágil, menos técnico, más flexible y menos oneroso que los procesos judiciales. *Constructora Estelar v. Aut. Edif. Púb.*, 183 DPR 1, 30 (2011); *J.R.T. v. Corp. Crédito Agrícola,* 124 DPR 846, 849 (1989); *Ceferino Pérez,* 87 DPR a la pág. 127.

Cuando en un "convenio colectivo se incluyen cláusulas en las cuales se dispone para el procesamiento de quejas y su arbitraje, éstas deben ser observadas por todos los que intervienen en las relaciones obrero patronales", lo cual "incluye a los obreros, patronos, uniones, la Junta de Relaciones del Trabajo y los tribunales". *A.A.A v U.I.A*, 200 DPR 903, 922 (2018), citando a *San Juan Mercantile Corp. v. J.R.T.*, 104 DPR 86, 90 (1975).

El cumplimiento con dichas cláusulas debe ser estricto, ya que "no puede permitirse que la implementación de un procedimiento de arbitraje, previamente pactado, dependa de los

deseos de una de las partes de comparecer al mismo". *Íd.*, citando a *Hermandad de Empleados v. F.S.E.*, 112 DPR 51, 56; *A.A.A. v. U.I.A.*, 200 DPR a la pág. 922; *Hietel v. PRTC*, 182 DPR 451, 462 (2011); *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 DPR 62, 69 (1987).

IV.

El Convenio dispone un procedimiento de arbitraje para resolver querellas[1] entre la Unión y el Patrono ante el Negociado. En efecto, el Artículo 57, Sección 3, del Convenio establece lo siguiente:

> Toda queja o querella se tramitará exclusivamente conforme a los mecanismos creados en este Artículo. Las partes acuerdan en este Convenio que de surgir controversias durante la vigencia del mismo, éstas se resolverán exclusivamente a través del procedimiento que a continuación se dispone:
>
> [...]
>
> Arbitraje
>
> a. Cuando la querella no haya sido resuelta en la etapa anterior, la misma podrá ser sometida a Arbitraje dentro de los diez (10) días laborables siguientes al recibo de la decisión del Departamento de Recursos Humanos o transcurrido el término para contestar, sin haber contestado, lo que ocurra primero. Los árbitros a utilizarse serán los del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos, excepto que se acuerde otra cosa entre las partes y los mismos se seleccionarán conforme al procedimiento de temas y a las normas de dicho Negociado o lo que se disponga más adelante en la sección 10h. **La decisión del Árbitro será final e inapelable, la cual será seguida y cumplida por las partes siempre que sea conforme a derecho y que se haya atendido a lo dispuesto en el Convenio.** Las partes le someterán al Árbitro la sumisión escrita de la querella a resolverse. Las disposiciones de este Artículo y el resto del Convenio prevalecerán sobre las Normas del Negociado. (Énfasis suplido).[2]

---

[1] El Convenio define "querella" como "toda controversia que envuelve el interés de uno o más empleados y/o agravio, queja o reclamación relacionada con la interpretación, aplicación, administración o alegada violación a este Convenio". Art. 57, Sec. 1 del Convenio Colectivo. Véase, Apéndice del recurso, pág. 151.

[2] Véase, Convenio, Apéndice del recurso, pág. 153.

En cuanto a las suspensiones de vistas, la Sección 10(f) de dicho artículo establece:

> Las partes acuerdan que las solicitudes de suspensión de vista de arbitraje se harán y notificarán a la otra parte con por lo menos cinco (5) días laborables de antelación a la fecha de la vista de arbitraje. De no cumplirse con ello, la vista no se suspenderá, a menos que el incumplimiento se debe a circunstancias excepcionales y fuera del control del que pide la suspensión y así lo determine el Árbitro mediante notificación escrita. […] Si no se cumple con estos requisitos, el Árbitro no tendrá jurisdicción para conceder la suspensión de la vista y la misma se celebrará en la fecha señalada, con o sin la presencia de la parte que solicitó la suspensión. […]

Por otro lado, el Reglamento, en su Artículo IX, dispone:

> a) **Las partes deberán redactar el acuerdo de sumisión previo a la vista de arbitraje, el cual deberá ser por escrito, firmado y entregado al árbitro al comienzo de ésta**.

> b) En la eventualidad que las partes no logren un acuerdo de sumisión llegada la fecha de la vista, el árbitro requerirá un proyecto de sumisión a cada parte previo al inicio de la misma. […] El árbitro determinará el (los) asunto(s) preciso(s) a ser resuelto(s) tomando en consideración el convenio colectivo, las contenciones de las partes y la evidencia admitida. Éste tendrá amplia latitud para emitir los remedios que entienda […].

En cuanto al proceso de la vista de arbitraje y las facultades del árbitro, el Artículo X del Reglamento establece lo siguiente:

> e) **Las partes comparecerán a la vista debidamente preparadas en la fecha, hora y sitio señalado por el árbitro** con toda la prueba testifical, así como copia del convenio colectivo. Será responsabilidad de cada parte citar a sus testigos y asegurar su comparecencia a la vista de arbitraje.

> f) **La incomparecencia de alguna de las partes no será motivo para suspender una vista de arbitraje. El árbitro podrá celebrar la vista *ex parte* y emitir el laudo a base de los fundamentos en los que la parte compareciente apoye su posición**; a base de la totalidad de la prueba admitida que, a juicio del árbitro, sea suficiente para demostrar los méritos de la controversia a su favor; y a base del convenio colectivo y de las normas de derecho y jurisprudenciales aplicables cuando

el acuerdo de sumisión así lo requiera. [...] (Énfasis suplido).

Además, el Artículo XIII del Reglamento permite que un árbitro del Negociado desestime una querella por incomparecencia de la parte querellante:

a. Las posposiciones o suspensiones solicitadas por las partes serán concedidas a discreción del árbitro. No obstante, no se aceptarán más de tres (3) suspensiones solicitadas por las partes, excepto en situaciones de emergencia o razones de fuerza mayor debidamente probadas que puedan justificar suspensiones adicionales.

b. Toda solicitud de posposición o suspensión de vista deberá presentarse por escrito al árbitro mediante correo electrónico con al menos cinco (5) días laborables de antelación a la fecha de la vista, salvo en circunstancias extraordinarias; y ésta deberá contener la sugerencia de tres (3) fechas en las cuales todas las partes estén disponibles para la celebración de la vista. La parte que presente la solicitud de suspensión está obligada a notificar a la otra parte simultáneamente por correo electrónico o el mismo día por servicio de entrega inmediata. [...]

c. El Director tendrá facultad para suspender vistas en situaciones especiales que, a su juicio, ameriten tal determinación o que sean necesarias para mantener un ambiente de paz laboral.

d. **Incomparecencias - Si una de las partes, o ambas, no comparecen a la vista luego de haber sido notificada(s) por el árbitro y sin haber solicitado u obtenido el aval para el aplazamiento o suspensión de la vista o sin haber cumplido con las disposiciones relativas a dicha solicitud, el árbitro**:

   1. **Podrá proceder con el cierre del caso con perjuicio si la incomparecencia es de la parte querellante**.

   2. Si la parte contraria es la que no comparece, podrá proceder con la celebración de la vista y emitir su decisión sólo a base de la prueba presentada por la parte querellante; acorde a lo dispuesto en el Artículo X(f) de este Reglamento.

   3. Si ninguna de las partes comparece, podrá tomar la acción que estime apropiada, consistente con la más rápida y efectiva

disposición de la controversia. (Énfasis suplido).

De forma similar, el Artículo XVII (d) del Reglamento dispone:

d) **Queda a discreción del árbitro cerrar un caso con perjuicio por incumplimiento de una orden emitida por éste en aquellos casos donde la parte que incumple es la querellante y ésta no demostró la existencia de justa causa para su incumplimiento**. (Énfasis suplido).

V.

La Unión y el Patrono acordaron que el procedimiento de arbitraje sería de acuerdo con las reglas del Negociado. Art. 57, Sec. 3, del Convenio. Asimismo, en el Artículo III(e) del Reglamento se dispone que "[a]l solicitar los servicios de que presta el Negociado, las partes aceptan, reconocen y se someten a este Reglamento para todos los propósitos pertinentes [...]". Por lo tanto, las partes en este caso estaban obligadas a cumplir con lo establecido en el Reglamento.

No hay controversia sobre el hecho de que ambas partes fueron oportuna y debidamente citadas por el Negociado para la vista del 15 de noviembre de 2023, a la 1:00pm. También se les advirtió sobre las consecuencias de su incomparecencia, las cuales incluían el cierre con perjuicio del caso.[3]

El día de la vista, el Patrono compareció a la hora señalada; no así la Unión. Surge de la transcripción de la vista que la árbitro indicó que, a la 1:35pm, no constaba en récord "ni correo electrónico, llamada o comunicación de la parte promovente excusándose o solicitando el aplazamiento por alguna razón imprevista".[4]

Luego, la árbitro concedió la palabra al representante del Patrono, quien expresó para el récord que la Unión había confirmado

---

[3] Véase, Notificación del 6 de septiembre de 2022, Apéndice del recurso, pág. 19.
[4] Transcripción de la vista, Apéndice del recurso, págs. 49-50

su interés en ver el caso y que el Patrono había autorizado el día libre a la querellante y a una testigo para que pudieran comparecer a la vista "como asuntos de la Unión".  El Patrono solicitó el cierre con perjuicio del caso, de conformidad con el Artículo XIII (d) del Reglamento.[5]  La árbitro accedió a esta solicitud y ordenó el cierre con perjuicio del caso a la 1: 42pm.[6]

La Unión no intenta controvertir estos hechos; en vez, señala que su representación llegó a la vista luego de que se cerrara el caso, y que la tardanza obedeció a un supuesto conflicto de señalamientos de la referida representación.

Como puede apreciarse de todo lo anterior, no podemos concluir que la árbitro hubiese cometido algún error de derecho. Adviértase que lo actuado está explícitamente contemplado por el Reglamento, el cual autoriza la desestimación con perjuicio de una querella por una primera incomparecencia de la parte querellante a la vista.  Véanse los Artículos X (f), XIII (d) y XVII (d) del Reglamento. Contrario a lo que sugiere la Unión, la jurisprudencia sobre la procedencia de la desestimación, como sanción en el contexto de una acción civil ante el TPI, no es aplicable en este contexto, pues aquí medió una determinación consensual de la Unión y el Patrono de someterse al proceso de arbitraje **según reglamentado por el Negociado**.  Tampoco le corresponde al tribunal, en este contexto, determinar si la árbitro ejerció adecuadamente la discreción que tenía; en cambio, nuestra función se circunscribe a determinar si hubo algún error de derecho.

Finalmente, contrario a lo planteado por la Unión, la árbitro tenía la autoridad para iniciar la vista, aunque no se hubiese sometido el acuerdo de sumisión, e imponer la sanción que estimase procedente, si alguna, dentro de lo autorizado por el Reglamento.

---

[5] *Íd.*, págs. 50-51.
[6] *Íd.*, pág. 52.

De lo contrario, cualquier parte podría "automáticamente suspender" una vista debidamente señalada, sin objeción ni solicitud de posposición, con solo optar por no comparecer al señalamiento.

En fin, luego de examinar la totalidad del expediente, y en el ejercicio de nuestra discreción bajo la Regla 40, *supra*, hemos determinado no intervenir con la decisión recurrida.

VI.

Por las razones expuestas, se deniega la expedición del auto de *certiorari*.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones